# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND

**County Commissioners of Worcester County, MD**          \*

                                 \*

                   **Plaintiff,**          \*

**vs.**          \*          **Case No. 09-CV-00013-MJG**

**Priceline.com, Inc.,** *et al.,*          \*

                   **Defendants.**          \*

\*      \*      \*      \*      \*      \*      \*

## <u>PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS</u>

# TABLE OF CONTENTS

INTRODUCTION ........................................................................................................... 1

STATEMENT OF FACTS ........................................................................................... 2

    **A.**   **The Hotel Rental Tax** ................................................................................. 2

    **B.**   **Defendants' Purchase and Sale of Hotel Rooms Located in Worcester County** ..................................................................................................... 4

ARGUMENT ............................................................................................................... 5

**I.**     **STANDARD GOVERNING MOTIONS TO DISMISS** ................................... 5

**II.**    **THE COMPLAINT STATES A VALID CLAIM FOR RELIEF AGAINST THE DEFENDANTS, BECAUSE THE DEFENDANTS ARE SUBJECT TO WORCESTER COUNTY'S HOTEL RENTAL TAX** ................................... 5

    **A.**   **The Defendants are Obligated under both the Enabling Act and the County's Hotel Rental Tax to Collect and Remit the Tax** ............................ 6

        1.   Defendants are "Hotels" as defined in the Enabling Act. ........................ 7

        2.   The County Code Requires Defendants to Collect and Remit Hotel Rental Taxes ......................................................................................... 9

            a.   TR 1-601(a) Imposes the Tax on the Defendants' Customers .................. 10

            b    TR 1-601(c) Requires Defendants to Collect and Remit the Tax ............. 11

            c.   Defendants' Construction Creates an Illogical and Absurd Result Contrary to the Purpose of the Hotel Rental Tax ...................................... 12

        3.   The County Hotel Rental Tax is Consistent with the Authority of the Enabling Act ......................................................................................... 14

        4.   The Hotel Rental Tax Is Not Ambiguous ............................................. 15

    **B.**   **Defendants Cannot Escape their Obligations to Remit Hotel Rental Taxes By Recharacterizing Their Business As the Providing of a "Service"** ...... 16

    **C.**   **Defendants' "Double Taxation" Argument is Baseless.** .......................... 18

**III.**   **THE HOTEL RENTAL TAX DOES NOT VIOLATE THE COMMERCE CLAUSE** ..................................................................................................... 19

    **A.**   **The Hotel Rental Tax Does Not Violate the Commerce Clause** ............. 21

    **B.**   **The Defendants' Activities Have a Substantial Nexus to Maryland** ........ 22

    **C.**   **The Tax Is Fairly Apportioned** ................................................................ 25

        1.   The Tax Is Internally Consistent ........................................................... 25

        2.   The Tax Is Externally Consistent .......................................................... 26

**IV.**   **WORCESTER COUNTY STATES VALID COMMON LAW CLAIMS** .......... 28

    **A.**   **Plaintiff Has Adequately Stated a Claim for Unjust Enrichment** .......... 28

        1.   Worcester County Conferred a Benefit Upon the Defendants ................ 30

        2.   Defendants Appreciated or Had Knowledge of the Benefit ................... 31

        3.   The Defendants Accepted or Retained the Benefit under Such Circumstances as to Make it Inequitable for the Defendants to Retain the Benefit Without Payment of its Value ....................................................................... 32

    **B.**   **Plaintiff Has Adequately Stated a Claim for Conversion** ...................... 32

   1. Worcester County Has Immediate Right to Hotel Rental Tax Proceeds ............ 32

   2. Worcester County Seeks Funds That Are or Should Have Been Segregated by the Defendants ................................................................................................. 33

  **C. Plaintiff Has Adequately Stated a Claim in Assumpsit, Or Quasi-Contract ..... 35**

**CONCLUSION** ....................................................................................................................... **36**

**<u>TABLE OF AUTHORITIES</u>**

**FEDERAL CASES**

*Ali v. Giant Food LLC*, 595 F. Supp. 2d 618 (D. Md. 2009)........................................5, 18

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) ........................................................5, 18

*Brown v. Gardner*, 513 U.S. 115 (1994)..........................................................................16

*City of Charleston v. Hotels.com, LP*, 520 F. Supp. 2d 757 (D.S.C. 2007)...........11, 30, 34

*City of Charleston v. Hotels.Com, LP*, 586 F. Supp. 2d 538 (D.S.C. 2008).......... 16, 23-24

*City of Fairview Heights v. Orbitz, Inc.*, 2006 U.S. Dist. LEXIS 47085
    (S.D. Ill. Jul. 12, 2006)...............................................................................................13

*City of Findlay v. Hotels.com LP*, 441 F. Supp. 2d 855 (D. Ohio 2006)....................30, 33

*City of Gallup v. Hotels.com, L.P.*, 2007 U.S. Dist. LEXIS 86720
    (D.N.M. 2007)........................................................................................................14, 17

*City of Goodlettsville v. Priceline.com, Inc.*, No. 3:08-0561, 2009 WL 841187
    (M.D. Tenn. Mar. 31, 2009)................................................................................. passim

*City of N. Myrtle Beach v. Hotels.com*, 2007 U.S. Dist. LEXIS 85886
    (D.S.C. Sept. 30, 2007) ..............................................................................................33

*City of Orange, Tx. v. Hotels.com, L.P.*, No. 1:06-CV-413, 2007 WL 2787985
    (E.D. Tex. Sept. 21, 2007) ...........................................................................................9

*City of Rome v. Hotels.com L.P.*, 2006 U.S. Dist. LEXIS 56369
    (N.D. Ga., May 8, 2006) ............................................................................................34

*City of San Antonio v. Hotels.com*, No. SA-06-CA-381-OG, 2007 WL 1541184
    (W.D. Tex., Mar. 20, 2007) ........................................................................................33

*City of San Antonio v. Hotels.com*, No. SA-06-CA-381-OG, 2008 WL 2486043
    (W.D. Tex. May 27, 2008)...............................................................................6, 24, 27

*Complete Auto Transit, Inc. v. Brady*, 430 U.S. 274 (1977)...................................... 19-22

*Container Corp. of Am. v. Franchise Tax Bd.*, 463 U.S. 159 (1983) ...............................27

*D.H. Holmes Co. v. McNamara*, 486 U.S. 24 (1988) ......................................................22

*Goldberg v. Sweet*, 488 U.S. 252 (1989) .............................................................. 21, 25-27

*In re Cardizem CD Antitrust Litig.*, 105 F. Supp. 2d 618 (E.D. Mich. 2000) ..................30

*In re K-Dur Antitrust Litig.*, 338 F. Supp. 2d 517 (D.N.J. 2004) ....................................32

*Little v. F.B.I.*, 1 F.3d 255 (4th Cir. 1993)................................................................5, 18

*Mayor & City Council v. Vonage Am. Inc.*, 569 F. Supp. 2d 535
    (D. Md. 2008) .........................................................................................................23, 27

*McLeod v. J.E. Dilworth Co.*, 322 U.S. 327 (1944)..........................................................22

*Medlock v. Rumsfeld*, 336 F. Supp. 2d 452 (D. Md. 2002), *aff'd*, 86 F. App'x 665,
    2004 WL 249566 ...................................................................................................5, 18

*Nat'l Bellas Hess, Inc. v. Dep't of Revenue of Ill.*, 386 U.S. 753 (1967) ...................22-23

*Okla. Tax Comm'n v. Jefferson Lines, Inc.*, 514 U.S. 175 (1995)....................21-22, 25-27

*Pitt County v. Hotels.com, L.P.*, No. 4:06-CV-30-BO, 2007 U.S. Dist. LEXIS
    85910 (E.D.N.C. Aug. 13, 2007) .................................................................................14

*Quill Corp. v. N.D. ex rel Heitkamp*, 504 U.S. 298 (1992) ........................................22-23

*Stenberg v. Carhart*, 530 U.S. 914 (2000)..........................................................................7

*United States v. Nelson*, 484 F.3d 257 (4th Cir. 2007) ......................................................7

*United States v. Williams*, 128 S. Ct. 1830 (2008) ..........................................................11

*W. Live Stock v. Bureau of Revenue*, 303 U.S. 250 (1938)...............................................22

*Wardair Canada Inc. v. Fla. Dep't of Revenue*, 477 U.S. 1 (1986) .................................22

**STATE CASES**

*Allied Inv. Corp. v. Jasen*, 354 Md. 547, 731 A.2d 957 (1999)...................................32-34

*ANA Towing, Inc. v. Prince George's County*, 314 Md. 711, 552 A.2d 1295
    (1989)..........................................................................................................................11

*AT&T Commc'ns of Md., Inc. v. Comptroller of the Treasury*, 405 Md. 83, 950
    A.2d 86 (2008).............................................................................................................22

*Bank of Am. v. Gibbons*, 173 Md. App. 261, 918 A.2d 565
    (Md. Ct. Spec. App. 2007)..........................................................................................31

*Chesapeake & Potomac Tel. Co. of Md. v. Comptroller of the Treasury, Retail
    Sales Tax Div.*, 317 Md. 3, 561 A.2d 1034 (1989) .....................................................22

*Chow v. State*, 393 Md. 431, 903 A.2d 388 (2006) ...........................................9-10, 12-13

iv

*Coal. for Open Doors v. Annapolis Lodge No. 622*, 333 Md. 359, 635 A.2d 412 (1994) ........................................................................................................15

*Dep't of Hous. & Cmty. Dev. v. Mullen*, 165 Md. App. 624, 886 A.2d 900 (2005) ..........30

*Dir. of Fin. for Baltimore County v. G & G P'ship*, 1987 Md. App. LEXIS 437 (Md. Ct. Spec. App. June 18, 1987) ..............................................................15

*E. Coast Welding & Constr. v. Refrigeration, Heating and Air Conditioning Bd.*, 72 Md. App. 69, 527 A.2d 796 (1987) ........................................................15

*Expedia Group v. City of Anaheim*, Audit Nos. 2008160-2008167, Hearing Officer Decision with Findings and Notice of Amount Due (Jan. 28, 2009) .............18

*Food Fair Stores, Inc. v. Greeley*, 264 Md. 105, 285 A.2d 632 (1972) ...........................34

*Hackley v. State*, 389 Md. 387, 885 A.2d 816 (2005) ..................................................8

*Hill v. Cross Country Settlements*, LLC, 402 Md. 281, 936 A.2d 343 (2007) ............29, 31

Ind. Dep't State Rev., Letter of Findings No. 08-0434 (Nov. 24, 2008) ...............11, 20, 25

*Miller v. Comptroller of Md.*, 398 Md. 272, 920 A.2d 467 (2007) ..............................9, 13

*Montgomery County v. Md. Soft Drink Ass'n*, 377 A.2d 486 (Md. 1977) ........................21

*Plitt v. Greenberg*, 242 Md. 359, 219 A.2d 237 (1966) ...........................................29, 32

*Royal Inv. Group, LLC v. Wang*, 183 Md. App. 406, 961 A.2d 665 (Md. Ct. Spec. App. 2008) .......................................................................32

*Slick v. Reinecker*, 154 Md. App. 312, 839 A.2d 784 (Md. Ct. Spec. App. 2003) ............35

*State, to Use of Employment Sec. Bd. v. Rucker*, 211 Md. 153, 126 A.2d 846 (1956) ........................................................................................................29

*The Fischer Org., Inc. v. Landry's Seafood Rests., Inc.*, 143 Md. App. 65, 792 A.2d 349 (Md. Ct. Spec. App. 2002) .....................................................29

*T-Mobile USA, Inc. v. Dep't of Fin., Baltimore City*, Nos. 05-MI-OO-PP67-0070 & 05-MI-OO-0100-0103, 2006 WL 1976188 (Md. Tax Ct., June 29, 2006) .............22

*Travelscape, LLC v. South Carolina Dept. of Rev.*, No. 08-ALC-17-0076-CC (S.C. Admin Law Court Feb. 12, 2009) ..............................................12, 19, 25

**FEDERAL STATUTES**

U.S. CONST. art. 1, § 8, cl. 2 ....................................................................................2

# STATE AND LOCAL STATUTES

CODE OF PUBLIC LOCAL LAWS OF WORCESTER COUNTY, MARYLAND
 § TR 1-601 *et seq.* ................................................................................. passim

MD. ANN. CODE art. 24, §§ 9-301 *et seq.* ......................................................... 2-3

MD. STATE GOVERNMENT CODE ANN. § 2-1238 ................................................8

# MISCELLANEOUS

1 Fowler V. Harper, et al., *The Law of Torts*, § 2.13, at 2:56 (3rd Ed. 1986)....................34

The Maryland Style Manual for Statutory Law ..................................................................8

## <u>TABLE OF EXHIBITS</u>

**<u>Document</u>**                                                                                      **<u>Exhibit</u>**

*Travelscape, LLC v. South Carolina Department Of Revenue*,
    No. 08-ALC-17-0076-CC (S.C. Admin. Law Ct. Feb. 12, 2009) .................................A

*City of Fairview Heights v. Orbitz, Inc.*,
    No. 05-CV-840-DRH, 2006 U.S. Dist. LEXIS 47085 (S.D. Ill. Jul. 12, 2006)............. B

*City of Gallup v. Hotels.com,*
    No. 06-0549-JC, 2007 U.S. Dist. LEXIS 86720 (D.N.M. Jan. 30, 2007) .................... C

*Director of Finance v. G & G P'Ship*,
    No. 1656, 1987 Md. App. LEXIS 437 (Md. Ct. Spec. App. Jun.18, 1987)...................D

*Expedia Group v. City of Anaheim*,
    Audit Nos. 2008160-2008167, Hearing Officer Decision with Findings
    And Notice of Amount Due (Jan. 28, 2009) ................................................................. E

*Letter of Findings No. 08-0434*,
    Indiana Department of State Revenue (Nov. 24, 2008)...................................................F

*City of Rome v. Hotels.Com L.P.,*
    No. 4:05-CV-249-HLM, 2006 U.S. Dist. LEXIS 56369 (N. D. Ga. May 8, 2006).......G

*City of North Myrtle Beach v. Hotels.com*,
    No. 4:06-CV-3063-RBH, 2007 U.S. Dist. LEXIS 85886 (D.S.C. Sept. 30, 2007).......H

<u>**INTRODUCTION**</u>

Plaintiff, the County Commissioners of Worcester County, Maryland ("Plaintiff" or "the County"), submits this memorandum of law in opposition to Defendants' Memorandum in Support of Their Motion to Dismiss for Failure to State a Claim ("Def. Mem.").

Defendants are internet travel companies ("ITC"), which, among other things, operate as purchasers and online resellers of hotel rooms, including hotel rooms located within the County. Pursuant to authority granted by the Maryland Legislature, Worcester County requires "[e]very person receiving any payment for room . . . rental" to collect a Hotel Rental Tax of 4.5% "on the amount paid for room . . . rental by or for any transient at any hotel." Thus, when a Defendant rents a Worcester County hotel room to a consumer (transient), the Defendant, as the "person" collecting the room rental, is legally required to collect, and then remit to the County, the Hotel Rental Tax based on the full "amount paid for room . . . rental" by the consumer. Defendants do not do this, and therefore have violated the County Code and common law.

The Complaint alleges that Defendants collect the full Hotel Rental Tax from the customers to whom they rent hotel rooms located in Worcester County, but wrongfully remit only a portion of that tax, keeping the rest for themselves. Specifically, Defendants buy rooms from hotels located in Worcester County at heavily discounted "wholesale" rates and resell these rooms to "transients" at higher "retail" rates. Defendants collect Hotel Rental Taxes from the transients based on the full retail rates, but only remit taxes to the County (through the brick-and-mortar hotel) based on the lower wholesale rates, in clear violation of the Hotel Rental Tax. The Defendants pocket the difference, unjustly enriching themselves at the expense of the County.

1

The Defendants move to dismiss the Complaint on several grounds. First, they engage in a tortured and extended discussion of both the State authorizing legislation and the County Code, asserting that the County lacks authority to impose a Hotel Rental Tax on Defendants and, in any event, that the tax does not apply to Defendants. The Defendants, however, substitute their own definitions for statutory definitions, and otherwise distort the clear statutory language and intent.

Second, Defendants argue that imposition of the Hotel Rental Tax violates the Commerce Clause of the United States Constitution (U.S. CONST. art. 1, § 8, cl. 2), in that the tax allegedly imposes an improper restriction on interstate commerce. The Hotel Rental Tax, however, taxes wholly *intrastate* activity – the rental of Worcester County hotel rooms to persons staying in Worcester County – and thus the Commerce Clause in not even implicated. But even if the so-called Dormant Commerce Clause were implicated, the case law is clear that the County may impose such a non-discriminatory tax on activity so central to the County, activity that requires the County to expend its resources to provide, for instance, fire, police and rescue services.

Finally, Defendants move to dismiss the County's state common law claims on various grounds that fail for the fundamental reason that Defendants are collecting taxes, as they should, but are retaining a portion of those taxes rather than remitting them to the County.

Accordingly, Defendants' Motion should be denied in its entirety.

## STATEMENT OF FACTS

### A.    The Hotel Rental Tax

Pursuant to the Maryland Code (the "Enabling Act"),[1] Worcester County is authorized to impose a Hotel Rental Tax "on a transient charge paid to a hotel located in that county." MD. ANN. CODE art. 24, § 9-303(a). A "transient charge" is "a hotel charge for sleeping

---

[1]    Although "Enabling Act" is not a term found in the statute, Plaintiff will refer to Md. Code Ann. art. 24 §§ 9-301 through 9-326 as the "Enabling Act" for consistency with Defendants' memorandum.

accommodations for a period not exceeding 4 consecutive months," excluding "any hotel charge for services or for accommodations other than sleeping accommodations." *Id.* at §§ 9-301(f)(1), (4). The statute defines a "hotel" as "an establishment that offers sleeping accommodations for compensation." *Id.* § 9-301(d)(1). "Hotel" specifically "includes" a variety of types of establishments (*e.g.*, apartment, inn, hostelry, motel, boarding house). *Id.* § 9-301(d)(2). A person is required to pay the Hotel Rental Tax "to the hotel when the person pays the transient charge." *Id.* § 9-308. The "hotel" must collect the Hotel Rental Tax from its customer and hold the tax monies "in trust for the authorized county that imposes the tax until the hotel pays the tax to that county." *Id.* §§ 9-309(a), (b). The "hotel" must then remit the tax funds held in trust to the county each month. *Id.* § 9-311.

Pursuant to this authority, the County has imposed its own Hotel Rental Tax of 4.5% "on the amount paid for room . . . rental by or for any transient at any hotel, motel, apartment, cottage or other similar place providing sleeping accommodations." Code of Public Local Laws of Worcester County, Maryland (the "County Code") § TR 1-601(a).[2] The obligation to collect the tax is placed on whoever collects the transient's rental payment: "[e]very person *receiving any payment for room . . . rental* on which a tax is levied under this section *shall collect* the amount of tax imposed from the transient or person on whom it is levied . . . at the time payment is made. The taxes required to be collected hereunder shall be deemed held in trust by the person required to collect them until remitted as hereinafter required." *Id.* § 1-601(c) (emphasis added). The "person collecting the tax" is required to remit the tax monthly. *Id.* § 1-601(d). Under the County Code, a "person" – the entity responsible for collecting the Hotel Rental Tax – includes "[a]ny individual, corporation, company, association, firm . . .." *Id.* § 1-601(b).

---

[2] A "Transient" is "[a]ny person who, for any period of not more than four consecutive months, obtains sleeping accommodations or space, either at his own expense or at the expense of another, in any hotel, motel, apartment, cottage or other similar place for which there is a room or building rental." County Code § TR 1-601(b).

**B.    Defendants' Purchase and Sale of Hotel Rooms Located in Worcester County**

As alleged in the Complaint, Defendants are ITCs that buy and resell hotel rooms located in Worcester County, using a business model they call the Merchant Model. *See* Complaint ¶¶ 2, 35-37.[3]  Defendants do not function merely as service providers collecting a fixed transaction fee. *Id.* ¶ 35.  Rather, pursuant to the Merchant Model, Defendants engage in two independent but related transactions in Worcester County, as they do elsewhere:  (i) they acquire inventories of hotel rooms at negotiated discounts ("wholesale" rates) from the brick-and-mortar hotels; and (ii) then resell the rooms to consumers at higher, "marked up" rates ("retail" rates), keeping the difference. *Id.* ¶¶ 35-37.

To rent a Worcester County hotel room from one of Defendants, the consumer (transient) pays the Defendant the higher retail rate, as well as the full Hotel Rental Tax based on the full retail rate, at the time the customer "books" the room online from the Defendant. *See id.* ¶¶ 36-37, 45.  The Defendant charges the consumer the higher retail rate and the full Hotel Rental Tax based on that retail amount. *Id.* ¶ 37.  The Defendant pays the brick-and-mortar hotel the lower wholesale rate and a portion of the Hotel Rental Tax based only on the lower wholesale rental rate and pockets the difference between the Hotel Rental Tax as it should have been calculated (based "on the amount paid for room . . . rental by or for any transient") and the lesser amount the Defendant pays to the hotel (based on the lower wholesale rate). *See id.* ¶¶ 44-45.  The only tax remitted to the County is that paid by the brick-and-mortar hotel. *Id.* ¶ 45.  The brick-and-mortar hotel does not even know the retail price paid by a transient because it is a stranger to the hotel rental transaction. *See id.* ¶¶ 35-37.

By way of illustration, if Transient rents a Worcester County hotel room for a week from Defendant for $2,000, which room Defendant had purchased from Inn for $1,500, Defendant

---

[3]     All citations to "Complaint" are to Plaintiff's complaint in this matter filed January 6, 2009.

charges Transient a Hotel Rental Tax of $90, but pays Inn only the wholesale room charge and the Hotel Rental Tax calculated thereon ($1,000 + $67.50). Inn then remits $67.50 to the County, and Defendant improperly retains the other $22.50 that should have been remitted to the County as part of the tax on the total amount Transient paid to Defendant to rent the room.

**ARGUMENT**

## I.      STANDARD GOVERNING MOTIONS TO DISMISS

In reviewing a motion to dismiss pursuant to Rule 12(b)(6), the Court should accept as true the well-pleaded allegations of the Complaint and draw any permissible inferences in favor of the County. *See Little v. F.B.I.*, 1 F.3d 255 (4th Cir. 1993); *Ali v. Giant Food LLC*, 595 F. Supp. 2d 618, 624 (D. Md. 2009) ("[T]he court must consider all well-pled allegations in a complaint as true, and must construe all factual allegations in the light most favorable to the plaintiff.") (internal citations omitted); *Medlock v. Rumsfeld*, 336 F. Supp. 2d 452, 460 (D. Md. 2002), *aff'd*, 86 F. App'x 665, 2004 WL 249566 (4th Cir. Feb. 11, 2004). A motion to dismiss should not be granted so long as the plaintiff's claim may be sustained by any showing of facts consistent with the allegations in the complaint. *Bell Atl. Corp. v. Twombly*, 127 S. Ct. 1955, 1968 (2007). Under these standards, Worcester County has more than adequately pled each of its causes of action.

## II.     THE COMPLAINT STATES A VALID CLAIM FOR RELIEF AGAINST THE DEFENDANTS, BECAUSE THE DEFENDANTS ARE SUBJECT TO WORCESTER COUNTY'S HOTEL RENTAL TAX

Defendants argue at length, in often overlapping and repetitive arguments, that they cannot be subjected to the Hotel Rental Tax because the tax can only apply to "hotels" and none of Defendants is a hotel. *See generally* Def. Mem. 13-24. All of Defendants' arguments on this same theme should be rejected because (1) the Defendants are obligated under both the Enabling Act and the County's Hotel Rental Tax to collect and remit the tax; (2) on a motion to dismiss,

Defendants cannot re-characterize themselves as service providers, rather than as the buyers and resellers of hotel rooms they are alleged to be, in an effort to contradict the facts alleged in the Complaint; and (3) the tax would not result in double taxation. The first of these points by far captures the bulk of Defendants' arguments.

At the outset, we note that all of these arguments are belied by the fact that Defendants admittedly collect hotel taxes from the transients and pay that sum to the brick-and-mortar hotel for remittance to the County. *See* Complaint ¶¶ 37, 45; Def. Mem. 2 (Defendants charge customers an amount "to cover the rent charged by the hotel, *the tax on the rent that the hotel operator must remit to the County*, and an additional amount that the defendant retains for providing the online services") (emphasis added). As another federal district court observed about these same Defendants in a similar case, "[i]f Defendants believed that they had no obligation whatsoever to collect and remit occupancy taxes, they would not have been doing so." *City of San Antonio v. Hotels.com*, No. SA-06-CA-381-OG, 2008 WL 2486043, at *14 (W.D. Tex. May 27, 2008).

As we next demonstrate, Defendants' arguments are without merit.

### A. The Defendants are Obligated under both the Enabling Act and the County's Hotel Rental Tax to Collect and Remit the Tax

Defendants argue that the Enabling Act authorizes the County to enact a Hotel Rental Tax that applies only to amounts "paid to a hotel" and that the County Code only applies to the "total charge made by any hotel," but that the Defendants are not hotels and therefore are not obligated to collect and remit the tax. *See, e.g.*, Def. Mem. 14. Defendants' argument should be rejected for several reasons.

**1.    Defendants are "Hotels" as defined in the Enabling Act.**

The Enabling Act defines "hotel" as "an establishment that offers sleeping accommodations for compensation."  Enabling Act § 9-301(d)(1).  As alleged in the Complaint, Defendants are entities (i.e., "establishments") that "offer[] sleeping accommodations" within Worcester County for sale and that require "compensation" before a consumer can obtain access to the rented hotel room.  *See* Complaint ¶¶ 2, 36-37, 45.  Accordingly, Defendants are "hotels" under the plain meaning of the Enabling Act.

Furthermore, this is true even if (as Defendants emphasize (Def. Mem. 18-19)) the Defendants are not hotels as that term is understood in common parlance.  The statutory definition of a term used in a statute prevails over colloquial meanings of that term.  *See Stenberg v. Carhart,* 530 U.S. 914, 944 (2000) ("When a statute includes an explicit definition, we must follow that definition, even if it varies from that term's ordinary meaning."); *see also U.S. v. Nelson*, 484 F.3d 257, 260 (4th Cir. 2007) (same).

Defendants further argue that the Enabling Act applies to "physical lodging establishments" but not to them, based on the statute's list of entities that are included within the definition of "hotel."  The statute provides that, in addition to the general definition discussed above, "hotel" specifically "includes" apartments, inns, hostelries, motels, boarding houses and more.  Enabling Act § 9-301(d)(2).  Defendants argue that because ITCs are not listed and are not "physical lodging establishments," ITCs thus are excluded from the definition of "hotel." *See* Def. Mem. 14-15.  This argument is a variation on a recurring theme, that the statutes could not apply to Defendants because they did not exist when the statutes were drafted.  Just last month, another District Court denied a motion to dismiss filed by these same Defendants, raising many of the same arguments, including this one.  The court explained that, although "neither entities such as the defendants nor the technology that enables the defendants' business models

existed" when the tax statute was enacted, the legislators clearly did intend to require all persons

who charge for the rental of hotel rooms, such as the ITCs, to collect and remit the hotel tax:

> Clearly, the drafters of the Tax Ordinance could not specifically
> have foreseen the ordinance's application to the defendants
> themselves . . ..  However, *the Tax Ordinance makes clear that the*
> *drafters intended to tax the consideration paid by consumers for*
> *hotel rooms*, and the [statutory] language is such that it applies to
> the defendants, regardless of the fact that the defendants did not
> exist at the time that language was drafted and regardless of the
> fact that the tax forms issued by the City identified only hotels and
> motels as subject to the Tax Ordinance.

*City of Goodlettsville v. Priceline.com, Inc.*, No. 3:08-0561, 2009 WL 841187, at *10 (M.D.

Tenn. Mar. 31, 2009) (emphasis added).

Furthermore, the use of the term "includes" means that the statute's listing of examples of

entities that are "hotels" is not exclusive.  The Maryland Style Manual for Statutory Law (the

"Style Manual"), the guide legislators are directed to use in crafting legislation, instructs

legislators to use the term "means" if the definition is to be exclusive and the term "includes" if

the definition is intended to be partial or illustrative.  *See Hackley v. State*, 389 Md. 387, 393,

885 A.2d 816, 819 (2005) (citing Style Manual at 27).[4]

In addition, unlike Defendants' tortured construction, the County's construction permits a

harmonized reading of the statute as a whole.  For example, Enabling Act § 9-308 provides that

"A person shall pay the hotel rental tax when the person pays the transient charge."  Enabling

Act § 9-309 requires a "hotel" to (1) give a transient a bill identifying the transient charge; and

(2) collect the rental tax from the person who pays the transient charge.  Plaintiff has alleged that

the Defendants, and only the Defendants, receive payment of the "transient charge."  *See*

---

[4]      MD. STATE GOVERNMENT CODE ANN. § 2-1238 (2008) requires the Department of Legislative Services (an
arm of the General Assembly) to maintain the Maryland Style Manual for Statutory Law.  In *Hackley*, 389 Md. at
393, 885 A.2d at 819, the Court of Appeals explained that the Style Manual is prepared by the Department of
Legislative Services  as "the style manual for drafting statutory law in Maryland," and that Style Manual's directives
are "to be followed in preparing any legislation for the General Assembly."

Complaint ¶ 37.  Under Defendants' statutory construction, no one would be responsible for collecting and then remitting the taxes to Worcester County, because the person who pays the "transient charge" does not pay it to a "hotel" as Defendants define the term.  Apart from relying on words contrary to those in the statute, this construction would produce illogical and absurd results contrary to the clear intent of the legislature, and thus should be disregarded.  *See Miller v. Comptroller of Md.*, 398 Md. 272, 285, 920 A.2d 467, 474 (2007) (rejecting proffered construction that would produce an "illogical and absurd" result).  Instead, the Court should adopt the County's construction, which derives directly from the statute's terms and harmonizes its various provisions to give them their intended effect.  *See Chow v. State*, 393 Md. 431, 443, 903 A.2d 388, 395 (2006) ("The cardinal rule of statutory interpretation is to ascertain and effectuate the intent of the Legislature.") (internal citations omitted).[5]

## 2.     The County Code Requires Defendants to Collect and Remit Hotel Rental Taxes

Defendants seek to isolate certain terms within the County Code and – outside of their statutory context –narrow the terms' clear meaning in an effort to avoid application of the Hotel Rental Tax.  The effect of the Defendants' argument would be to defeat legislative intent by allowing vast sums of Hotel Rental Tax to go uncollected.  But under Maryland law, the guiding principle of statutory construction is to ascertain and effectuate the intent of the legislature.  *See Chow*, 393 Md. at 443, 903 A.2d at 395.  The plain intent of the Worcester Hotel Rental Tax is to levy a tax on every hotel stay within a resort area in Worcester County.  *See* County Code § TR 1-601(a).

---

[5]      Defendants' citation to *City of Orange, Tx. v. Hotels.com, L.P.*, No. 1:06-CV-413, 2007 WL 2787985 (E.D. Tex. Sept. 21, 2007), is unavailing.  *See* Def. Mem. 18.  The ordinance at issue in that case defined "Hotels" as "buildings."  *Id.* at *6.  Orange's definition of "Hotel" as meaning a "building" can have no bearing on the meaning of "hotel" in Maryland, where that term is defined as "an establishment that offers sleeping accommodations for compensation."  Defendants plainly are establishments that rent sleeping accommodations, even if they are not "buildings."

The Hotel Rental Tax, County Code § TR 1-601, contains two main provisions. Section TR 1-601(a) imposes the tax, and section TR 1-601(c) imposes collection responsibilities on certain parties. When both sections are read together, it is plain that the Defendants are among the parties required to collect and remit the Hotel Rental Tax from their customers.

### a. TR 1-601(a) Imposes the Tax on the Defendants' Customers

Section TR 1-601(a) provides that the Hotel Rental Tax is imposed "on the amount paid for room . . . rental by or for any transient at any hotel, motel . . . or other similar place providing sleeping accommodations." Thus, when a transient rents a hotel room, the tax is imposed. The phrase "room . . . rental" is defined as "[t]he total charge made by any hotel, motel, apartment, cottage or other similar place for sleeping accommodations or space furnished the transient." *Id.* § TR 1-601(b). The phrase "hotel, motel, apartment, cottage or other similar place" is defined as those places identified (hotels, etc.), as well as any "other similar lodging place offering sleeping accommodations or space for one or more persons at any time, and the owner and operator thereof, which for compensation holds out to furnish or furnishes sleeping accommodations or space to any transient." *Id.* § TR 1-601(b).

In short, by these provisions, the County imposes a tax on the amount a transient pays when charged by any hotel or other place that provides sleeping accommodations, or the owner thereof, for sleeping accommodations furnished to him.[6] The Hotel Rental Tax applies to the Defendants because they buy and resell hotel rooms to the public for compensation. The County has alleged that when the Defendants buy rooms from the brick-and-mortar hotel, they become the owners of those hotel rooms. *See* Complaint ¶ 36. The rooms themselves are plainly within the definition of "hotel," and in any event are within the definition of "similar lodging space

---

[6]     Defendants have argued that the definition of a term in the County code must be identical to that in the state statute. *See* Def. Mem. 15. Accordingly, according to their own position, the Defendants are "Hotels" for purposes of the Hotel Rental Tax, just as they are for the Enabling Act, as discussed above.

offering sleeping accommodations." *See U.S. v. Williams*, 128 S. Ct. 1830 (2008) (in construing

a list of items in a statute, the last term in the sequence is more general, but related to the

previous terms). The Defendants, having purchased and taken title to hotel rooms,

unquestionably "furnish" or "hold[] out to furnish" the hotel rooms to transients, and those

transients unquestionably are required to pay the Hotel Rental Tax.[7]

### b. TR 1-601(c) Requires Defendants to Collect and Remit the Tax

The "collections" section of the Hotel Rental Tax provides that the Defendants are

responsible for collecting and remitting the tax, because they are the only parties that "receive

payment" from the transient. Specifically, the duty to collect the tax is placed on "[e]very person

receiving any payment for room . . . rental" that is taxed pursuant to TR 1-601(a), which as

shown above includes the Defendants' customers. County Code § TR 1-601(c). The person

receiving the payment must collect the tax "from the transient . . . at the time payment is made."

*Id.* The taxes required to be collected are to be held in trust by the person required to collect

them until they are duly remitted to the County. *Id.*

As stated, the Complaint alleges that the Defendants purchase and take title to hotel

rooms that they resell to transients. Complaint ¶¶ 35-42. The transaction between the transient

and the Defendants that is subject to the Hotel Rental Tax is strictly between these two parties,

---

[7]     One who furnishes a thing need not be the final source of or have physical control over that thing. *See,
e.g., ANA Towing, Inc. v. Prince George's County*, 314 Md. 711, 717-18, 552 A.2d 1295, 1299 (1989) (finding that a
county need not perform services to "furnish" them; defining "furnish" as including supplying, providing, or
equipping for accomplishment of a particular purpose). For these reasons, one federal court determined that ITCs
acting under the "merchant model" "furnish" rooms to consumers:

> If consumers access a website, use it to book a hotel room, pay the website directly, and never
> pay the hotel, or interact with the hotel at all until they arrive, the court cannot accept
> Defendants' assertion that they do not *furnish* accommodations to consumers.

*City of Charleston v. Hotels.com, L.P.*, 520 F. Supp. 2d 757, 768 (D.S.C. 2007) (emphasis added); *see also* Ind.
Dep't State Rev., Letter of Findings No. 08-0434 (Nov. 24, 2008) (finding that ITCs "furnish" rooms under Indiana
tax laws).

and does not include the hotel, which has already sold its rights to the Defendants. *See* Complaint ¶ 35. It is the Defendants that collect the payment for the room rental and all taxes from the transient. Complaint ¶ 43. As an Administrative Law Judge in South Carolina recently found in a proceeding involving the ITCs, the Defendants are the "persons receiving payment" for the rental of the hotel room:

> [T]he customer's transaction of booking the hotel room does not involve interaction with the hotel at all. The ITC is the merchant of record for the transactions in which a hotel room is booked by the ITC. It is the ITC who accepts money from the customer and thereafter makes arrangements with the hotel to reserve the room, and then communicates the appropriate reservation information to its customer. The customer's credit card invoice shows that the hotel reservations were purchased not from the hotel but from the ITC. In renting a room, a customer makes no payments to anyone other than the ITC unless he or she purchases additional guest services at the hotel site.

*Travelscape, LLC v. S.C. Dep't of Rev.,* No. 08-ALC-17-0076-CC, at 11 (S.C. Admin. Law Court Feb. 12, 2009).[8]

Accordingly, the Hotel Rental Tax must be collected and remitted to the County by the Defendants.

### c. Defendants' Construction Creates an Illogical and Absurd Result Contrary to the Purpose of the Hotel Rental Tax

The Defendants' statutory construction would ensure that no one would be responsible for paying or remitting taxes to the County for hotel rentals purchased through the Defendants – an illogical and absurd result that could not have been envisioned or intended by the drafters of the Hotel Rental Tax.

A cardinal rule of statutory construction under Maryland law is to ascertain and effectuate the intent of the legislature. *Chow*, 393 Md. at 443, 903 A.2d at 395. The meaning of

---

[8]      Attached as Exhibit A.

a particular term should not be interpreted in isolation, but should be viewed in the context of the entire statutory scheme. *Id.* In doing so, the court should harmonize provisions of the same code dealing with the same subject so that each portion of the code may be given effect. *Id.* Statutory text "should be read so that no word, clause, sentence or phrase is rendered superfluous or nugatory." *Id.*

Because the Defendants are the only parties that receive any payment for the room rental from the transient, they are the only party that could be responsible under the Hotel Rental Tax to collect and remit the taxes. If the Defendants' interpretation were sustained, however, no one would be responsible to collect and then remit the taxes to the County, even though the taxes were paid by the transient to the Defendants. *See* Complaint ¶¶ 37, 45. Given the County's manifest intention to levy a tax on all hotel stays, this absurd result could not have been the intent of the Worcester County Commission. Accordingly, Defendants' construction of these terms should be disregarded. *Miller*, 398 Md. at 285, 920 A.2d at 474 (refusing to adopt a construction that would lead to an "illogical and absurd" result). What makes infinitely more sense is to construe the two provisions of the Hotel Rental Act together as described above, such that each has meaning, and fulfills the County's intention to tax the full rental rate for each hotel stay by a transient.

In denying a motion to dismiss a similar complaint based on this same argument by these same Defendants, another District Court explained that Defendants' construction "[w]ould open up a potentially gaping loophole: a hotel operator could simply incorporate a shell entity or make some other similar arrangement, rent hotel rooms to that entity for a nominal amount, and then re-rent the rooms to consumers, who would be taxed only on the nominal sum paid by the side entity to the operator." *City of Goodlettsville*, 2009 WL 841187, at *11 (citing *City of*

*Fairview Heights v. Orbitz, Inc.*, No. 05-CV-840-DRH, 2006 U.S. Dist. LEXIS 47085, at *19-20

(S.D. Ill. Jul. 12, 2006)).[9] As that court explained:

> Since the goal of the Ordinance is to generate revenue by levying a
> five percent occupancy tax on the total amount of rent paid by
> guests for lodging, it is doubtful that the drafters intended to collect
> on anything less.

*Id.*; *see also City of Gallup v. Hotels.com, L.P.*, No. 06-0549-JC, 2007 U.S. Dist. LEXIS 86720

at *14 (D.N.M. 2007)[10] ("The Ordinance clearly provides that the amount of taxes due are a

percentage of 'the total amount of rent paid for lodging," which means "the actual amount

received by Defendants from the customer").

### 3. The County Hotel Rental Tax is Consistent with the Authority of the Enabling Act

Defendants argue that the Hotel Rental Tax exceeds the authority granted by the Enabling

Act, again because Defendants are not hotels. *See* Def. Mem. 15-16. As stated above, however,

this argument fails because the Defendants are required to collect and remit the tax under both

the Enabling Statute and the Hotel Rental Tax.[11]

Even if the Hotel Rental Tax were somehow more broad than the Enabling Act, however,

that inconsistency would be legally irrelevant unless the inconsistency arose to the level of a

conflict. A conflict, however, "exists only when a local law prohibits something permitted by

---

[9]    Attached as Exhibit B.

[10]    Attached as Exhibit C.

[11]    Defendants' reliance on the Fourth Circuit's recent decision in *Pitt County* is misplaced because that case addressed the meaning of a local ordinance that applied only to "operators" of hotels. *See* Def. Mem. 15-17 (citing *Pitt County v. Hotels.com, L.P.*, No. 4:06-CV-30-BO, 2007 U.S. Dist. LEXIS 85910, at *7-17 (E.D.N.C. Aug. 13, 2007)). Because the statute did not define "operator," the court turned to dictionary definitions. *Id.* at *11. The Hotel Rental Tax at issue here, in contrast, requires "[e]very person receiving any payment for room . . . rental" to collect the tax. County Code § TR 1-601(c). The only similar term in the Hotel Rental Tax is the definition of "Hotel, Motel, Apartment, Cottage or Other Similar Place," County Code § TR 1-601(b), which includes in that phrase both the "owners and operators" of hotels, motels, etc. As discussed above, this provision of the County Code addresses the entity that charges the transient. Also as stated above, the County has alleged that the Defendants are *owners* of the hotel rooms they rent.

the legislature, or permits something prohibited by the legislature." *E. Coast Welding & Constr. v. Refrigeration, Heating and Air Conditioning Bd.*, 72 Md. App. 69, 74, 527 A.2d 796, 799 (1987) (internal citations omitted).  Even a local ordinance that "enlarges upon" the provisions of a state enabling statute does not create such a conflict.  *Coal. for Open Doors v. Annapolis Lodge No. 622*, 333 Md. 359, 635 A.2d 412 (1994) ("the fact that an ordinance enlarges upon the provision of a [state] statute by requiring more than the statute requires creates no conflict"); *Dir. of Fin. for Baltimore County v. G & G P'ship*, No. 1656, 1987 Md. App LEXIS 437, at *11 (June 18, 1987)[12] ("[n]othing in the enabling legislation enacted by the Legislature or in the limitations subsequently imposed on the County's authority to levy transfer taxes suggests that the County is bound to assess the tax on the same basis as the State has elected").

The language of the Enabling Act and the Hotel Rental Tax are entirely consistent, as discussed above, because (1) the Enabling Act permits the imposition of a tax on a transient staying in a hotel, to be collected and remitted by "an establishment that offers sleeping accommodations for compensation," and (2) the County Code imposes the Hotel Rental Tax on a transient staying in a Worcester hotel, to be collected and remitted by "[e]very person receiving any payment for room . . . rental."  But any perceived difference in the statutory language cannot be said to rise to the level of a "conflict."  Although the statutory language is not identical, the County Code does not "prohibit an activity which is intended to be permitted by state law or permit[] an activity which is intended to be prohibited by state law."  *Coal. for Open Doors*, 333 Md. at 380, 635 A.2d at 422.

### 4.      The Hotel Rental Tax Is Not Ambiguous

Defendants also suggest that the Complaint must be dismissed because, if the Hotel

---

[12]      Attached as Exhibit D.

Rental Tax applies to Defendants, it does so as the result of a "latent ambiguity." Def. Mem. 19. This conclusory argument has no basis, given the clarity of the County Code as described above. Defendants cannot create ambiguity by playing games with definitions, as "[a]mbiguity is a creature not of definitional possibilities but of statutory context." *Brown v. Gardner*, 513 U.S. 115, 119 (1994). Defendants' attempts to misconstrue statutory terms based on possible meanings of specific terms isolated and taken out of context do not create ambiguity for those terms. *See City of Charleston v. Hotels.Com, LP*, 586 F. Supp. 2d 538, 543-45 (D.S.C. 2008) (construing the statutory language in light of the legislative intent, in particular avoiding an "absurd result" and "absurd loopholes" that "would result from Defendants' interpretation of the statute"); *City of Goodlettsville*, 2009 WL 841187, at *8 ("Courts seeking to determine legislative intent must look to the entire statute in order to avoid any forced or subtle construction of the pertinent language.") (internal citations omitted).

**B.** **Defendants Cannot Escape their Obligations to Remit Hotel Rental Taxes By Recharacterizing Their Business As the Providing of a "Service"**

Defendants argue that they charge customers for "services," including the exchange of information and "the facilitation" of hotel room rentals, and further argue that these charges do not constitute a room rental subject to the Hotel Rental Tax. *See* Def. Mem. 20-21. Among other things, Defendants' attempt to re-characterize their business as one of providing the service of facilitating travel reservations – as essentially an on-line travel agent – is legally impermissible, because the facts alleged in the Complaint are to the contrary. The Complaint specifically alleges that Defendants "do not function merely as service providers collecting a fixed transaction fee," but rather that they are in "the business of acquiring and then selling hotel rooms" in Worcester County, employing what the Defendants have called the "Merchant Model." *See* Complaint ¶¶ 2, 35, 45. Plaintiff has further alleged that Defendants have admitted

they are in the business of buying and reselling hotel rooms in sworn public filings with the Securities and Exchange Commission.  *See* Complaint ¶¶ 38-42.

Even if the Defendants' charges to their customers legitimately included some type of fee outside the scope of a room rental charge, the Defendants are entitled to exclude such sums from the tax calculation only if the fee is set forth separately from the room rental charges on the transient's bill.  *See* County Code § TR 1-601(b) (in definition of "Room or Building Rental," clear requirement that "[i]f the charge includes any amount for services . . . the portion of the total charge which represents only 'room or building rental' shall be distinctly set out and billed to the transient as a separate item"); Enabling Act § 9-309(a).  Defendants do not maintain (nor could they) that they set forth their "service" fees separately from the "room or building rental" charges.  *See City of Gallup*, 2007 U.S. Dist. LEXIS 86720, at *15 (denying motion to dismiss because rental amounts not set out separately on invoices from any alleged "service fees").  This in any event would be a fact issue requiring discovery.

The Defendants recently were subject to severe criticism for their similarly disingenuous efforts to re-characterize the nature of their business.  After an extensive evidentiary hearing, a California administrative agency found that, although the ITCs have changed "their description of how they do business," at least in part "in response to litigation contesting their position concerning occupancy taxes," the business in fact has remained unchanged:

> Despite these changes, the [ITCs] *have been substantially consistent in the manner they do business under the merchant model, which has barely altered despite the revised nomenclature*.

*　*　*

> Semantics, the use of their own industry lingo, recasting prior misrepresentation, and the disavowal by [ITC] corporate representatives of their own contractual provisions and SEC filings *does not change the facts based on the evidence that [ITCs] are buying rights to rooms and reselling them to the end customers and that they are therefore obligated to collect occupancy taxes based on that customer's room cost.*
>
>         \*    \*    \*
>
> The evidence shows that, in many instances, the [ITCs] admit that they "sell" (i.e. rent) hotel rooms to transients rather than "facilitate" reservations as set forth in much of their current wording to describe what they do.

*Expedia Group. v. City of Anaheim*, Audit Nos. 2008160-2008167, at 18, 28, Hearing Officer Decision with Findings and Notice of Amount Due (Jan. 28, 2009) (emphasis added.)[13]

On a motion to dismiss, the facts as alleged in the Complaint must be taken as true.  *See Twombly*, 127 S. Ct. at 1968; *Little*, 1 F.3d 255; *Ali*, 595 F. Supp. 2d at 624; *Medlock*, 336 F. Supp. 2d at 460.  Accordingly, Defendants' arguments predicated on a different view of their businesses must be rejected.

### C.    Defendants' "Double Taxation" Argument is Baseless

Defendants assert that the Complaint must be dismissed because application of the Hotel Rental Tax to them would result in double taxation, because both Defendants and the brick-and-mortar hotel would have to pay the tax.  *See* Def. Mem. 24-25.  To the extent this argument is competent at all on a motion to dismiss, it must be rejected.  The County Code imposes the Hotel Rental Tax once, and imposes it on the transient.  County Code § TR 1-601(a)  Further, the obligation to collect and remit the tax is imposed only once, on the "person receiving any payment for room . . . rental" from the transient.  *Id.* § TR 1-601(c).  There can be no double taxation because only one party – the transient – must pay the tax, and only one party – the

---

[13]    Attached as Exhibit E.

Defendants – must collect and remit the tax.[14]

Rather than seeking to collect double taxes, the County merely seeks to collect the one full tax to which it is entitled, based on the full retail rate Defendants charge and the transients pay. Defendants will be entitled to an offset for the amount already remitted through the hotels. *See City of Goodlettsville*, 2009 WL 841187, at *12 n.11 ("defendants would be entitled to an offset of the amount of the tax that has been remitted by the hotels themselves, to avoid the unjust enrichment of the plaintiff").

## III.     THE HOTEL RENTAL TAX DOES NOT VIOLATE THE COMMERCE CLAUSE

The Defendants also move to dismiss on the ground that imposition of the Hotel Rental Tax on the Defendants violates the so-called Dormant Commerce Clause in two respects: (1) the Defendants lack a substantial "nexus" to Worcester County; and (2) the Hotel Rental Tax is not "fairly apportioned." *See, e.g.*, Def. Mem. 29 (citing *Complete Auto Transit, Inc. v. Brady*, 430 U.S. 274, 279 (1977) (setting forth four-part test, including nexus and fair apportionment, for local tax under the Dormant Commerce Clause)).

As an initial matter, the Hotel Rental Tax fundamentally is a local tax, not a tax on interstate commerce subject to the Commerce Clause at all. The Hotel Rental Tax is imposed on "[e]very person receiving any payment for room . . . rental" within Worcester County. County Code § TR 1-601. The tax is triggered when a transient rents a room in the County. Although the Defendants attempt to re-characterize their business as one of providing services outside of

---

[14]     The transaction between the transient and the Defendants does not include the hotel, which has already sold its rights to the Defendants. *See* Complaint ¶¶ 35, 43. As noted above, a recent finding by an Administrative Law Judge in South Carolina involving these same issues with these same Defendants confirms that the ITCs are the "persons receiving payment" for the rental of the hotel room. *Travelscape*, No. 08-ALC-17-0076-CC, at 11 ("[T]he customer's transaction of booking the hotel room does not involve interaction with the hotel at all. It is Petitioner who accepts money from the customer and . . . [t]he customer's credit card invoice shows that the hotel reservations were purchased not from the hotel but from Petitioner.")

Maryland (*see* Def. Mem. 1-2 (describing their business as providing a "service" to "facilitate the making of hotel room reservations for consumers")) – as essentially an on-line travel agent – the facts ultimately will show otherwise.

But for the Motion to Dismiss, it is dispositive that the Complaint specifically alleges that Defendants "do not function merely as service providers collecting a fixed transaction fee," but rather that they are in "the business of acquiring and then selling hotel rooms" in Worcester County, employing what the Defendants have called the "Merchant Model." *See* Complaint ¶¶ 2, 35, 45. Thus, as alleged in the Complaint, the Defendants purchase and take title to hotel rooms in Worcester County, and then rent out those rooms to others for use (necessarily) in Worcester County, a quintessentially *intrastate* transaction. *See id.* The Defendants unsurprisingly have not cited a single Commerce Clause case involving a tax on the sale or rental of real property located within the taxing jurisdiction.

The only authority of which we are aware addressing whether a similar hotel tax involves interstate commerce is a published finding of the Indiana Department of State Revenue. The Indiana Department of State Revenue rejected a protest by the "taxpayer" –an unidentified internet travel company that, like the Defendants, was using the "Merchant Model" – against the imposition of a similar hotel tax. *See* Ind. Dep't State Rev., Letter of Findings No. 08-0434, at 1-2 (Nov. 24, 2008).[15] There (as here), the customer reserves a hotel room through an ITC's internet site "and pays [the ITC] for the whole transaction at the time." *Id.* In rejecting the ITC's Commerce Clause challenge, the Indiana Department of State Revenue concluded that "the commerce at issue here is not, in fact, interstate in nature":

> Unlike a traditional interstate transaction of tangible personal
> property, where the goods are located in one state and transported
> into another state, the transactions in this case took place wholly

---

[15] Attached as Exhibit F.

> within Indiana. . . . The only activities which took place outside
> Indiana occurred when [the ITC] and its customer reached an
> agreement to conduct an transaction in Indiana and arranged
> payment for that transaction. The actual transfer [*i.e.*, the transfer
> to the customer of the hotel room] occurred in an Indiana unitary
> transaction.

*Id.* at 6. But even if the transactions at issue do touch interstate commerce so as to potentially implicate analysis under the Commerce Clause, the Hotel Rental Tax should be sustained, as we next show.

### A. The Hotel Rental Tax Does Not Violate the Commerce Clause

Application of the Hotel Rental Tax to the Defendants is constitutionally permissible if the tax "[1] is applied to an activity with a substantial nexus with the taxing State, [2] is fairly apportioned, [3] does not discriminate against interstate commerce, and [4] is fairly related to the services provided by the State." *Brady*, 430 U.S. at 279. The Defendants only contest the first and second prongs of this test.[16] *See* Def. Mem. 29 and n.7.

At the outset, we note that the Defendants draw an inaccurate and irrelevant distinction between sales taxes and use taxes. The Defendants inaccurately purport to derive this distinction from two cases that do not address a use tax at all, but rather address the application of a state retail sales act. *See Montgomery County v. Md. Soft Drink Ass'n*, 377 A.2d 486, 490 n.3 (Md.

---

[16] The Defendants assert, but do not move to dismiss on the grounds that, the Hotel Rental Tax also violates the third and fourth prongs of the *Brady* test. *See* Def. Mem. 29 n.7. This assertion is without basis. The Hotel Rental Tax satisfies the third prong, the discrimination test, which bars states from "discriminating against foreign enterprises competing with local business." *Okla. Tax Comm'n v. Jefferson Lines, Inc.*, 514 U.S. 175, 197 (1995). The Hotel Rental Tax does not discriminate against non-local business because the same tax is imposed on all who rent hotel rooms, regardless whether the customers are Maryland or out-of-state residents and whether they contact the hotel from out of state, are walk-up customers, or book through one of the Defendants.

The Hotel Rental Tax also satisfies the fourth prong of the *Brady* test, which operates to "ensure that a State's tax burden is not placed upon persons who do not benefit from services provided by the State." *Goldberg v. Sweet*, 488 U.S. 252, 266 (1989). "The purpose of this test is to ensure that a State's tax burden is not placed upon persons who do not benefit from services provided by the State." *Id.* at 266-67. The Hotel Rental Tax, which the Defendants are required to collect and remit, satisfies this test because it is imposed only on persons who rent real property within the County, and who thus rely on, among other things, the County's "police and fire protection, the use of public roads and mass transit, and the other advantages of civilized society." *Id.*

1977) ("We are not here concerned with the Maryland Use Tax…."); *T-Mobile USA, Inc. v. Dep't of Fin., Baltimore City*, Nos. 05-MI-OO-PP67-0070 & 05-MI-OO-0100-0103, 2006 WL 1976188 (Md. Tax Ct. June 29, 2006) at *2-3 (discussing *Maryland Soft Drink* and not mentioning any use tax) (both cited in Def. Mem. 27-28). Any such distinction in any event is irrelevant, because the *Brady* four-part test applies equally in evaluating sales and use taxes. *See Brady*, 430 U.S. at 279 (sales and use taxes); *Quill Corp. v. N.D. ex rel Heitkamp*, 504 U.S. 298, 309-13 (1992) (applying same Commerce Clause analysis to both sales and use taxes); *D.H. Holmes Co. v. McNamara*, 486 U.S. 24, 29 (1988) (applying *Brady* to a use tax); *Wardair Canada Inc. v. Fla. Dep't of Revenue*, 477 U.S. 1, 8 (1986) (applying *Brady* to a sales tax); *AT&T Commc'ns of Md., Inc. v. Comptroller of the Treasury*, 405 Md. 83, 93, 950 A.2d 86, 94 (Md. 2008) (applying same Commerce Clause analysis to a sales and use tax).[17]

With that background, we next address the Defendants' arguments with respect to the first two prongs of the *Brady* Dormant Commerce Clause test.

### B. The Defendants' Activities Have a Substantial Nexus to Maryland

The Defendants first argue that Worcester County cannot impose the Hotel Rental Tax against them unless the Defendants have a physical presence within the County. *See* Def. Mem. 29-32. The Defendants rely on *Quill Corp.*, 504 U.S. 298, which, in turn, relied on *National Bellas Hess, Inc. v. Department of Revenue of Illinois*, 386 U.S. 753, 753-54 (1967), for the

---

[17] In this context, the Defendants also assert that "[t]he Dormant Commerce Clause prohibits states from imposing a sales tax upon sales that are consummated outside their borders." Def. Mem. 26. The Defendants rely on *McLeod v. J.E. Dilworth Co.*, 322 U.S. 327, 330-31 (1944), but their reliance is misplaced because that principle from *McLeod* derives from a now-rejected line of cases holding that *all* state taxes on interstate commerce *per se* violate the Commerce Clause. *Compare McLeod*, 322 U.S. at 330 ("[A] tax on an interstate sale like the one before us . . . involves an assumption of power by a State which the Commerce Clause was meant to end.") with *Brady*, 430 U.S. at 280 (recognizing Supreme Court's rejection of rule that "a direct tax on interstate sales, even if fairly apportioned and nondiscriminatory . . . [is] unconstitutional per se"), *W. Live Stock v. Bureau of Revenue*, 303 U.S. 250, 254 (1938) ("it was not the purpose of the commerce clause to relieve those engaged in interstate commerce from their just share of [the] state tax burden even though it increases the cost of doing business"), and *Okla. Tax Comm'n v. Jefferson Lines, Inc.*, 514 U.S. 175, 182 (1995) (same).

proposition that the substantial nexus test requires that a taxpayer have a physical presence in the taxing jurisdiction. Defendants misstate the test.

In *Quill*, the Supreme Court limited the *Bellas Hess* physical presence rule, making clear that *Bellas Hess* "created a safe harbor for vendors 'whose only connection with customers in the [taxing] State is by common carrier or the United States mail.'" *Id.* at 315 (modification in original) (citing *Bellas Hess*). The Defendants' connection to Worcester County is that they take title to and rent County hotel rooms, not that they sell goods that are transported through Maryland.

In *Mayor & City Council v. Vonage America Inc.*, this Court explained that, "[a]t its core, the 'substantial nexus' requirement is 'a means for limiting state burdens on interstate commerce.'" 569 F. Supp. 2d 535, 539 (D. Md. 2008) (quoting *Quill Corp.*, 504 U.S. at 313). The Court approved the application of Baltimore City's telecommunications tax to Vonage's "nomadic" Voice over Internet Protocol even though Vonage lacked a physical presence in Baltimore, Vonage's customers do not have a fixed service address and it cannot be determined whether the calls that were the subject of the tax originated or terminated in Baltimore. *Id.* at 538. The Court held, however, that "the presence of a billing address in the taxing locality is sufficient to constitute a 'substantial nexus.'" *Id.* at 538-39. *See also id.* at 539 n.7 (Vonage, like Defendants here, "misunderstands what is the taxed transaction"; the taxed transaction is "a customer's agreement to purchase Vonage's service with a Baltimore City billing address, because it is this agreement that enables the provision of the telecommunications line in the first place").

Courts analyzing these same arguments by these same Defendants in the same context have upheld the applicability of hotel taxes to ITCs. In *City of Charleston*, these same Defendants alleged that they could not be required to collect and remit hotel rental taxes imposed on their Merchant Model transactions under the Commerce Clause. 586 F. Supp. 2d at 540. The court declared that it had "no hesitation in ruling here that the Dormant Commerce Clause is not implicated by the Defendants' alleged actions." *Id.* at 544. The court explained that the "cases cited by Defendants in which attempted taxation was struck down typically involve scenarios where the only connection between the taxed entity and the taxing jurisdiction is that goods happen to have been shipped through the jurisdiction on the way to their eventual destination." *Id.* The court distinguished those cases, noting:

> Here, there is both a substantial nexus and a physical presence between the taxing jurisdictions and Defendants, since Defendants are alleged to have proactively marketed, booked, and leased hotel rooms and other accommodations which are physically located in [the taxing jurisdictions]. Therefore, the court finds that allowing the levying of municipal accommodations taxes against Defendants for the types of transactions in question would not unduly restrict interstate commerce, and is not a constitutional violation.

*Id.*

Thus, on identical facts, addressing an identical argument, the court rejected the assertion that the Defendants lack a substantial nexus with the taxing jurisdiction. Other authorities are in accord. *See City of San Antonio v. Hotels.com*, 2008 WL 2486043, at *14 (the ITCs' contention that "they cannot be 'taxed' on activities in cities with which they have no substantial nexus . . . is a red herring because the occupant of the room (who is the taxpayer) is already being taxed, and the Defendants have already been collecting and remitting taxes on the rooms they sell. The only question in this lawsuit is whether the Defendants have an obligation to collect and remit occupancy tax on the higher sell rate, rather than on the lower net rate. If Defendants believed

that they had no obligation whatsoever to collect and remit occupancy taxes, they would not have been doing so.").[18]

The Defendants are engaged in the acquisition and rental of Worcester County hotel rooms, a quite substantial nexus to the County.  Accordingly, the Hotel Rental Tax satisfies the first *Brady* requirement.

### C.      The Tax Is Fairly Apportioned

The Defendants also allege that the Hotel Rental Tax violates the "fair apportionment" portion of the *Brady* test.  The central purpose of fair apportionment is "to ensure that each State taxes only its fair share of an interstate transaction." *Jefferson Lines*, 514 U.S. at 184 (citing *Goldberg*, 488 U.S. at 260-61).  The Defendants state that this portion of the test requires an analysis of whether the tax creates the risk of multiple taxation.  *See* Def. Mem. at 29, 32. Although the Defendants are correct that the principle of fair share "is the lineal descendent of *Western Live Stock's* prohibition of multiple taxation," *Jefferson Lines*, 514 U.S. at 184, the Defendants misstate the current test for fair apportionment.  To ensure fair apportionment, the court must examine whether a tax is both "internally and externally consistent." *Goldberg*, 488 U.S. at 261.  Because the Defendants have not made clear which element of the fair apportionment test they challenge, we address both.

### 1.      The Tax Is Internally Consistent

Internal consistency exists "when the imposition of a tax identical to the one in question by every other State would add no burden to interstate commerce that intrastate commerce would

---

[18]      *See also Travelscape*, No. 08-ALC-17-0076-CC (South Carolina administrative law judge upholding hotel tax because the ITC "derived income from booking accommodations that were located within South Carolina – accommodations which enjoyed the benefits of local fire and police protection"); Ind. Dep't State Rev., Letter of Findings No. 08-0434, at 6 (Nov. 24, 2008) (the hotel tax involves "an activity with more than substantial nexus with Indiana.  The Indiana hotel rooms are occupied in Indiana.  Taxpayer already collects those taxes which the hotels would collect from the customers.  Unlike the vendors discussed in *Quill*, Taxpayer's contacts with Indiana are not discrete or remote.  Taxpayer specifically entered into arrangements with Indiana-located hotels to arrange accommodations in Indiana for Taxpayer's online customers.").

not also bear." *Jefferson Lines*, 514 U.S. at 185. This inquiry "simply looks to the structure of the tax at issue to see whether its identical application by every State in the Union would place interstate commerce at a disadvantage as compared with commerce intrastate." *Id.* For example, in *Jefferson Lines*, the Court found no failure of internal consistency in a tax imposed by Oklahoma on sales of bus tickets within the state for travel originating in the state, including travel that ended outside the state. *Id.* The Court held that if every state imposed an identical tax, no sale would be subject to more than one state's tax because bus travel can originate only in one state. *Id.*; *see also Goldberg*, 488 U.S. at 261 (tax on interstate phone calls charged to an in-state service address internally consistent; "if every State taxed only those interstate phone calls which are charged to an in-state service address, only one State would tax each interstate telephone call").

Here, as in *Jefferson Lines* and *Goldberg*, there is no internal inconsistency because the Hotel Rental Tax is charged upon a person who rents a hotel room in Worcester County, and is to be collected and remitted only by the entity paid by the renter. If every other locality likewise imposed such a tax, no hotel rental would be subject to more than one locality's tax.[19]

### 2.     The Tax Is Externally Consistent

The second portion of the Supreme Court's test for fair apportionment asks whether the tax is externally consistent. *Jefferson Lines*, 514 U.S. at 185. External consistency "looks not to the logical consequences of cloning, but to the economic justification for the State's claim upon the value taxed, to discover whether a State's tax reaches beyond that portion of value that is fairly attributable to economic activity within the taxing state." *Id.* The court "examine[s] the

---

[19]     Defendants further argue that the Hotel Rental Tax is a "tax on a service transaction" and poses the risk of multiple taxation because "the services can be characterized as touching a number of states, each of which may try to tax it." Defendants' Mem. at 32. But, as explained at length above, the tax is imposed on the amount paid to rent a hotel room situated in Worcester County, and is triggered by the payment for the room rental. Because a hotel room can exist only in one county, the tax is internally consistent.

in-state business activity which triggers the taxable event and the practical or economic effect of the tax on that interstate activity." *Goldberg*, 488 U.S. at 262.

The Hotel Rental Tax imposes a tax on renters of hotel rooms located within Worcester County. The fundamental economic activity that is the subject of the tax is the rental of the hotel room within the County, and thus the tax cannot be said the "reach[] beyond that portion of the value that is fairly attributable to economic activity within [Worcester County]." *Jefferson Lines*, 514 U.S. at 185. Rather, the entire economic activity is within the County. Indeed, the Defendants admit as much, as they do not challenge the payment of the Hotel Rental Tax on the wholesale amount they pay when they take title to the rooms, only on the increased amount they charge to the actual renters of the rooms. *See City of San Antonio v. Hotels.com*, 2008 WL 2486043, at *14 ("If Defendants believed that they had no obligation whatsoever to collect and remit occupancy taxes, they would not have been doing so."); *see also Golbgerg*, 488 U.S. at 262-63 (risk of multiple taxation is "exaggerated" where other states lack sufficient nexus to impose their own tax, as with "States through which the telephone call's electronic signals merely pass"); *Vonage*, 569 F. Supp. 2d at 540 ("no threat of real multiple taxation" because, "[e]ven if there is a possibility that these other states might tax Vonage for the same transaction, the Supreme Court has made clear that the 'limited possibility of multiple taxation' is not sufficient to invalidate a state tax") (citing *Goldberg*, 488 U.S. at 263-64); *id.* at 540-41 ("for a court to strike down the application of an apportionment formula, a taxpayer must prove 'by clear and cogent evidence that the income attributed to the State is in fact out of all appropriate proportions to the business transacted in that State'") (citing *Container Corp. of Am. v. Franchise Tax Bd.*, 463 U.S. 159, 170 (1983)).

Here, as in *Goldberg* and *Vonage*, the Defendants face no real threat of multiple taxation.

The Worcester County tax only applies to the rental of hotel rooms that are located within the County. *See* Complaint ¶ 1. The Defendants are required to collect and remit the tax only when they have been paid for the rental of a room located within the County. The likelihood that another state will attempt to tax the Defendants' activity because their "electronic signals" pass through those states is remote. Thus, the tax is externally consistent. Thus, the Defendants' Dormant Commerce Clause argument is devoid of merit.

## IV.    WORCESTER COUNTY STATES VALID COMMON LAW CLAIMS

In addition to its claim for relief under County Code § TR 1-601, Plaintiff has asserted claims for unjust enrichment (Count II), conversion (Count III), and assumpsit (Count IV). Complaint ¶¶ 52-61.

Defendants argue that Plaintiff has failed to state claims for unjust enrichment and assumpsit because: (1) Plaintiff assertedly lacks power to impose a Hotel Rental Tax on the Defendants, such that "Defendants receive no benefit and Worcester County incurred no expense," and (2) the Defendants did not "appreciate" or have "knowledge" of the benefit because Plaintiff did not previously seek payment of the tax from Defendants. *See* Def. Mem. 37-39. Defendants argue that Plaintiff has failed to state a claim for conversion because (1) Plaintiff had no "immediate" right to any allegedly converted funds because Plaintiff lacked the power to impose the tax on Defendants, and (2) money is not a proper subject of a conversion claim. *Id*. 37-38.

None of Defendants' arguments has merit.

### A.    Plaintiff Has Adequately Stated a Claim for Unjust Enrichment

Defendants claim that Plaintiff must establish: "(1) that [it] conferred a benefit upon the defendant[s], (2) that the defendant[s] appreciated or had knowledge of the benefit, and (3) that the defendant[s] accepted or retained the benefit under 'such circumstances as to make it

inequitable for the defendant[s] to retain the benefit without payment of its value." Def. Mem. 36 (citing *The Fischer Org., Inc. v. Landry's Seafood Rests., Inc.*, 143 Md. App. 65, 76, 792 A.2d 349, 356 (Md. Ct. Spec. App. 2002)).

Maryland courts, however, do not require proof of all three elements for an unjust enrichment claim where the defendant's retention of a benefit would be inequitable. The Maryland Court of Appeals has long recognized that, for purposes of unjust enrichment or restitution, the law implies a debt "whenever the defendant has obtained possession of money which, in equity and good conscience, he ought not to be allowed to retain." *State, to Use of Employment Sec. Bd. v. Rucker*, 211 Md. 153, 158, 126 A.2d 846, 849 (1956). Thus, when a person acquires property "non-tortiously and without notice that another has the beneficial ownership" of the property then discovers the other's ownership, the person is "under a duty to account to the other for the direct product of the subject matter and the value of the use to him, if any." *Plitt v. Greenberg*, 242 Md. 359, 364, 219 A.2d 237, 241 (1966) (citing RESTATEMENT (FIRST) OF RESTITUTION § 123 (1937)); *see also Hill v. Cross Country Settlements, LLC*, 402 Md. 281, 295, 936 A.2d 343, 351 (2007) ("Unjust enrichment is a claim, however, that may not be reduced neatly to a golden rule"); *id.* at 295-96, 936 A.2d at 351 ("A successful unjust enrichment claim serves to 'deprive the defendant of benefits that in equity and good conscience he ought not to keep, even though he may have received those benefits quite honestly in the first instance, and even though the plaintiff may have suffered no demonstrable loss.'" (citing *Dep't of Hous. & Cmty. Dev. v. Mullen*, 165 Md. App. 624, 659, 886 A.2d 900, 921 (2005)).[20]

Here, the County alleges that the Defendants collected money from consumers in addition to the room rental amount, representing that the additional sum was due as a tax to the

---

[20] *See also In re Cardizem CD Antitrust Litig.*, 105 F. Supp. 2d 618, 669 (E.D. Mich. 2000) ("courts often award equitable remedies under common law claims for unjust enrichment in circumstances where claims based upon contract or other state law violations prove unsuccessful").

County.  Complaint ¶ 45.  Defendants then failed to remit the full amount they collected.  *Id.*

These facts state a claim for unjust enrichment under Maryland law.  Regardless, Plaintiff has

demonstrated all three elements in the more restrictive test advanced by Defendants.

### 1.    Worcester County Conferred a Benefit on the Defendants

Plaintiff alleges that it has conferred a benefit on Defendants, namely, the "privilege[] to

conduct business within Plaintiff's city limits."  Complaint ¶ 53.  Furthermore, Plaintiff alleges

that Defendants actually collected the Hotel Rental Tax from the consumers on the retail (full)

price of the rooms rented.  *Id.* ¶ 45.  The unlawful retention of such funds necessarily resulted in

Defendants' unjust enrichment at Plaintiff's expense.  Accepting Plaintiff's allegations as true,

this Court should find that the first element of an unjust enrichment claim has been pleaded.

Several courts have rejected the Defendants' argument in factually similar cases.  In *City

of Findlay v. Hotels.com LP*, 441 F. Supp. 2d 855, 860-61 (D. Ohio 2006), the court held that the

duty to remit collected taxes was independent of the taxing authority's power to impose them:

> The tax collected by the vendor from the consumer . . . is not part
> of the price, but is a tax collection for the benefit of the state, and
> of counties levying an additional sales tax . . . [N]o *person* other
> than the state or such a county or transit authority shall derive any
> benefit from the collection or payment of the tax levied.

(Emphasis in original).  The court in *City of Charleston*, 520 F. Supp. 2d at 772, also concluded

that these Defendants obtained a benefit by retaining amounts for hotel rooms "charged

customers under the guise of a tax, which consumers would have reasonably assumed would be

remitted to local governments."  The court in *City of Goodlettsville, supra*, agreed, observing that

"the underlying principle of the doctrine of unjust enrichment is that a party who receives a

benefit that he or she desires, under circumstances rendering retention of the benefit without

providing compensation inequitable, must compensate the provider of the benefit."  2009 WL

841187, at *12.[21]

So too here, the County's unjust enrichment claim should be sustained because Defendants' retention of a portion of the tax violates the fundamental principles of justice, equity, and good conscience.

## 2. Defendants Appreciated or Had Knowledge of the Benefit

Defendants cannot credibly argue that they lacked "knowledge or appreciation" of the amounts they were collecting from consumers as taxes and then retaining. In any event, Maryland does not require that Defendants have "notice" or "knowledge or appreciation" of the benefit received:

> It is immaterial how the money may have come into the defendant's hands, and the fact that it was received from a third person will not affect his liability, if, in equity and good conscience, he is not entitled to hold it against the true owner . . . a plaintiff could recover money from even an innocent transferee who was without knowledge that he possessed the plaintiff's money.

*Plitt*, 242 Md. at 364, 219 A.2d at 241 (citations omitted).

Maryland courts hold that a defendant need not have "knowledge that the funds were obtained by wrongful conduct against the plaintiff who seeks their return." *Bank of Am. v. Gibbons*, 173 Md. App. 261, 279, 918 A.2d 565, 575 (Md. Ct. Spec. App. 2007) (citing RESTATEMENT (FIRST) OF RESTITUTION § 123 (1937)). In *Gibbons*, the court vacated a summary judgment for the defendant and remanded for a determination of all the "equitable circumstances" pertinent to resolution of the unjust enrichment claim. *Id*. at 283, 918 A.2d at

---

[21] The elements of unjust enrichment under Tennessee law are identical to those asserted by Defendants under the law of Maryland. *Compare Goodlettsville*, 2009 WL 841187, at *12, with *Hill v. Cross Country*, 402 Md. at 295, 936 A.2d at 351.

578. Such a determination is no less warranted here.[22]

### 3. The Defendants Accepted or Retained the Benefit under Such Circumstances as to Make it Inequitable for the Defendants to Retain the Benefit Without Payment of its Value

Plaintiff has alleged that the Defendants charged their customers for taxes, but then refused to remit all of those taxes to the County. Complaint ¶ 45. Thus, the Defendants appear to have accepted that they are required to collect the tax; however, they maintain that they are not obligated to remit the full amount of the collected taxes to the County. Under these circumstances, it would be inequitable for the Defendants to keep the money. *See, e.g.*, *City of Goodlettsville*, 2009 WL 841187, at *12.

### B. Plaintiff Has Adequately Stated a Claim for Conversion

The Defendants collected the full Hotel Rental Tax, but retained a portion of those taxes for themselves and thereby converted those funds. *See* Complaint ¶ 45. Defendants argue that Plaintiff's conversion claim fails because (1) the County had no "immediate" right to the funds, and (2) "Maryland law does not recognize money as a subject of a conversion claim." Def. Mem. 38. Both arguments fail.

### 1. Worcester County Has Immediate Right to Hotel Rental Tax Proceeds

Conversion is "any distinct act of ownership or dominion exerted by one person over the personal property of another in denial of his right or inconsistent with it." *Allied Inv. Corp. v. Jasen*, 354 Md. 547, 560, 731 A.2d 957, 963 (1999) (citations omitted). Plaintiffs have alleged the elements of conversion. Defendants collected the tax in full but failed to remit the full

---

[22]     The case cited by Defendants, *Royal Inv. Group, LLC v. Wang*, 183 Md. App. 406, 961 A.2d 665 (Md. Ct. Spec. App. 2008), does not support a motion to dismiss because it upheld a finding that the *evidence* had established that the defendant's enrichment was not "unjust." *See In re K-Dur Antitrust Litig.*, 338 F. Supp. 2d 517, 545-46 (D.N.J. 2004) (denying summary judgment; whether enrichment was "just" or "unjust" under the laws of 50 States presented material issues of fact).

amounts to Plaintiff.  Complaint ¶ 45.  Plaintiff is entitled to possession of these amounts, which Defendants unlawfully and unjustly have retained.  Complaint ¶¶ 56-58.  These allegations state a claim for conversion under Maryland law.

Other courts also have upheld conversion claims in legally and factually similar cases against these same Defendants.  *See City of Goodlettsville,* 2009 WL 841187, at *13;[23] *see also City of Charleston*, 520 F. Supp. 2d at 771-72 (collection and wrongful retention of hotel tax stated conversion claim independent of scope of tax ordinance); *City of San Antonio v. Hotels.com*, No. SA-06-CA-381-OG, 2007 WL 1541184, at *4 (W.D. Tex. Mar. 20, 2007) (same); *City of Rome v. Hotels.com L.P.*, No. 4:05-CV-249-HLM, 2006 U.S. Dist. LEXIS 56369, at *20 (N.D. Ga. May 8, 2006)[24] (same); *City of Findlay v. Hotels.com LP*, 441 F. Supp. 2d 855, 864-65 (D. Ohio 2006) (demand for possession and refusal to comply unnecessary to state conversion claim where defendants allegedly collected and wrongfully retained hotel taxes); *City of North Myrtle Beach v. Hotels.com*, No. 4:06-CV-3063-RBH, 2007 U.S. Dist. LEXIS 85886 at *11 (D.S.C. Sept. 30, 2007) (same).[25]

### 2.     Worcester County Seeks Funds That Are or Should Have Been Segregated by the Defendants

Defendants also allege that monies are intangible and are not subject to a claim of conversion. Def. Mem. 37-38.  Defendants acknowledge that this general rule has a pertinent exception:

---

[23]     The elements of conversion in Tennessee are identical to those in Maryland.  *Compare City of Goodlettsville,* 2009 WL 841187, at *13, *with Allied Inv. Corp.*, 354 Md. at 560, 731 A.2d at 963.

[24]     Attached as Exhibit G.

[25]     Attached as Exhibit H.

An exception exists, however, when a plaintiff can allege that the
defendant converted specific segregated or identifiable funds. . . .
[C]onversion claims generally are "recognized in connection with
funds that have been or should have been segregated for a
particular purpose or that have been wrongfully obtained or
retained or diverted in an identifiable transaction."

*Allied Inv. Corp. v. Jasen*, 354 Md. 547, 564-65, 731 A.2d 957, 966 (1999) (citing 1 Fowler V.

Harper, et al., *The Law of Torts*, § 2.13, at 2:56 (3rd Ed. 1986)) (other citations omitted).  Thus,

Maryland law does not require that the monies remain segregated.  Rather, a claim for

conversion exists where the wrongfully obtained or retained funds were "diverted in an

identifiable transaction" or "should have been segregated."

The funds the Defendants retained are from specifically identifiable transactions, *i.e.*, the

Merchant Model transactions under which the Defendants collected taxes based on the retail rate,

but only remitted taxes based on the wholesale rate.  Further, the funds at issue "should have

been segregated" and held in trust for the County.  *See* County Code § TR 1-601(c) (hotel taxes

are to be collected and are "deemed held in trust by the person required to collect them until

remitted as hereinafter required").  The taxes collected thus constitute "funds that have been or

should have been segregated for a particular purpose or that have been wrongfully obtained or

retained or diverted in an identifiable transaction."  *Allied Inv.*, 354 Md. at 564-65, 731 A.2d at

966.  Accordingly, Plaintiff seeks to recover specific segregated or identifiable funds.

Defendants' argument that the proceeds from such identifiable transactions are not

subject to a claim for conversion merely because Defendants chose not to segregate them is

wrong.  Such an argument would allow a wrongdoer to defeat a viable claim for conversion by

the simple act of commingling funds.  *See Food Fair Stores, Inc. v. Greeley*, 264 Md. 105, 119-

20, 285 A.2d 632, 640 (1972) ("commingling [] allocated assets with the general fund, amounted

to a conversion of the assets which entitled [the wronged party] to the immediate recovery of

their value").

### C. Plaintiff Has Adequately Stated a Claim in Assumpsit, Or Quasi-Contract

Defendants do not seriously contest the Plaintiff's assumpsit claim.  Rather, Defendants explain that a plaintiff can bring a claim for assumpsit, even when the plaintiff's claim is not based in contract, if the plaintiff "ought to recover something from the defendant as a matter of justice or good conscience."  Def. Mem. 38-39 (citing *Slick v. Reinecker*, 154 Md. App. 312, 839 A.2d 784 (Md. Ct. Spec. App. 2003)).  Defendants then reassert that because the Defendants did not receive a benefit from Worcester County, justice does not require a finding of assumpsit. Def. Mem. 39.  As addressed above, Defendants can hardly maintain that they did not receive a benefit when they charged consumers a tax that they kept for themselves.  Defendants also contend that, because the County did not attempt to collect the tax before, "there can be no implied promise."  *Id.*  Again, this argument misses the mark.  Defendants' acts of charging consumers the tax constitute an implied promise to remit that tax to the County.  Defendants did not do so and, therefore, the claim of assumpsit is viable.

## <u>CONCLUSION</u>

For the reasons stated above, this Court should DENY Defendants' Motion to Dismiss in its entirety.

Respectfully submitted, this 16th day of April, 2009.

_____
David Blair Killalea (D. Md. Bar No. 10129)
**GILBERT OSHINSKY LLP**
1100 New York Ave NW Ste 700
Washington, DC 20005
Telephone:  (202)772-2280
Email: killalead@gotofirm.com

Karl P. Barth, *Pro Hac Vice*
**LOVELL MITCHELL & BARTH, LLP**
11542 NE 21st ST
Bellevue, WA 98004
Telephone:  (425) 452-9800
Email: kbarth@lmbllp.com

Christopher Lovell
**LOVELL STEWART HALEBIAN LLP**
500 Fifth Ave., 58th Floor
New York, NY 10110
Telephone:  (212) 608-1900
Email: clovell@lshllp.com

Paul M. Weiss
Michael J. Lotus
**FREED & WEISS LLC**
111 West Washington Street; Suite 1331
Illinois 60602
Telephone:  (312) 220-0000
Email:  paul@freedweiss.com

***Counsel for Plaintiff County Commissioners of Worcester County, Maryland***

**CERTIFICATE OF SERVICE**

      I certify that on April 16, 2009, I caused the foregoing to be filed with this Court's

CM/ECF system for service on all record counsel.

                                      /s/ David Blair Killalea
                                      David Blair Killalea (D. Md. Bar No. 10129)
                                      **GILBERT OSHINSKY LLP**
                                      1100 New York Ave NW Ste 700
                                      Washington, DC 20005
                                      Telephone:  (202)772-2280
                                      Email: killalead@gotofirm.com