IN THE UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF MARYLAND

COUNTY COMMISSIONERS OF WORCESTER     *
COUNTY, MARYLAND
                                                                          *

        PLAINTIFF,                                          *        Civil Action No. MJG-09-0013

                                                                          *
        v.
                                                                          *
PRICELINE.COM INCORPORATED, *ET AL.*,
                                                                          *
        DEFENDANTS.
                                                                          *

*        *        *        *        *        *        *        *

**DEFENDANTS' REPLY MEMORANDUM IN SUPPORT OF
THEIR MOTION TO DISMISS FOR FAILURE
TO STATE A CLAIM UPON WHICH RELIEF MAY BE GRANTED**

J. Stephen Simms (#4269)
John T. Ward (#1507)
M. Scotland Morris (#25167)
SIMMS SHOWERS LLP
20 S. Charles Street, Suite 702
Baltimore, Maryland 21201
Telephone:   410-783-5795
Facsimile:   410-510-1789
    Counsel for Defendants

May 15, 2009

# TABLE OF CONTENTS

PAGE

TABLE OF CASES AND AUTHORITIES ................................................................. iii

PRELIMINARY STATEMENT ................................................................................. 1

ARGUMENT ............................................................................................................ 3

I.     THE WORCESTER HOTEL RENTAL TAX DOES NOT APPLY TO
       DEFENDANTS. ............................................................................................ 3

       A.     The Hotel Rental Tax Only Applies To Amounts Paid To A Hotel And
              None Of The Defendants Is A "Hotel." ................................................ 3

              1.     The Clear Language Of The Statute Supports Defendants'
                     Construction. ............................................................................. 5
              2.     The loophole argument must be rejected here for the same
                     reasons the Fourth Circuit rejected it in *Pitt County*. ................ 9

       B.     Worcester County May Impose A Tax Only On Amounts Paid To A
              Hotel, And Not On Any Other Amounts. ............................................ 11

       C.     The Hotel Rental Tax Imposes A Tax Only On Hotel Charges For
              Sleeping Accommodations. ................................................................. 13

       D.     The Hotel Rental Tax Imposes Tax Collection And Remittance
              Obligations Only On Hotels, Not On Defendants. .............................. 15

II.    ANY AMBIGUITY MUST BE RESOLVED AGAINST THE COUNTY. .................. 16

III.   THE COUNTY'S CONSTITUTIONAL ANALYSIS MISSES THE MARK. .............. 16

       A.     The Hotel Rental Tax Is A Sales Tax And The Sale At Issue Occurs
              Outside Worcester County. ................................................................. 17

       B.     Because There Is No Allegation That The Out-of-State Defendants Have
              Physical Presence In Worcester County, The "Substantial Nexus"
              Requirement Of The Commerce Clause Cannot Be Met. ..................... 19

       C.     Application Of The Hotel Rental Tax To Defendants Violates The
              Requirement That The Tax Be Fairly Apportioned Because It Exposes
              Defendants To The Risk Of Multiple Taxation. ................................... 20

IV.    WORCESTER COUNTY'S TAG-ALONG CLAIMS ALSO FAIL. ............................. 25

CONCLUSION ...................................................................................................... 25

# TABLE OF CASES AND AUTHORITIES

*AT&T Commc'ns of Md. v. Comptroller of Treasury*,
405 Md. 83 (Md. 2008) ........................................................................... 19, 20

*Baltimore County v. G&G Partnership*,
1987 Md. App. LEXIS 437 (Md. Ct. Spec. App. June 18, 1987) ................................ 3, 15

*Bell Atlantic Corp. v. Twombly*,
550 U.S. 544 (2007) ............................................................................... 5, 14

*Black & Decker Corp. v. United States*,
436 F.3d 431 (4th Cir. 2006) ........................................................................ 9

*Board of County Com'r of Cecil County v. R & M Enters*,
350 Md. 540 (Md. 1998) ........................................................................... 3, 15

*Bowen v. City of Annapolis*,
402 Md. 587 (Md. 2007) ............................................................................. 5

*City of Charleston v. Hotels.com, L.P.*,
586 F. Supp. 2d 538 (D.S.C. 2008) ................................................................. 20

*City of Findlay v. Hotels.com*,
561 F. Supp. 2d 917 (N.D. Ohio 2008) .............................................................. 9

*City of Orange, Tex. v. Hotels.com, LP*,
No. 1:06-CV-413, 2007 WL 2787985
(E.D. Tex. Sept. 21, 2007) ...................................................................... 9, 12

*Coalition for Open Doors v. Annapolis Lodge No. 622*,
333 Md. 359 (Md. 1994) ............................................................................ 15

*Complete Auto Transit, Inc. v. Brady*,
430 U.S. 274 (1977) .......................................................................... *passim*

*Comptroller v. Clyde's Chevy Chase, Inc.*,
377 Md. 471 (Md. 2003) ............................................................................ 16

*Container Corp. of Am. v. Franchise Tax Bd.*,
463 U.S. 159 (1983) ............................................................................... 21

*In re CWM Chem. Servs., Inc.*,
DTA No. 818757, 2003 N.Y. Tax LEXIS 307
(N.Y. Tax App. Trib. Dec. 11, 2003) ............................................................... 24

*Eastern Diversified Props. v. Montgomery County*,
    319 Md. 45 (Md. 1990) ...................................................................................................... 4


*Gustafson v. Alloyd Co.*,
    513 U.S. 561 (1995) ........................................................................................................ 7

*Host Marriott Corp. v. United States*,
    113 F. Supp. 2d 790 (D. Md. 2000),
    *aff'd*, 267 F.3d 363 (4th Cir. 2001) .................................................................................. 6

*Hughey v. United States*,
    495 U.S. 411, 419 (1990) ................................................................................................ 6

*Louisville/Jefferson County Metro Gov't v. Hotels.com L.P.*,
    No. 3:06-CV-480-R, 2008 WL 4500050
    (W.D. Ky. Sept. 30, 2008) ................................................................................... 9, 10, 16

*Mayor & City Council of Baltimore v. Vonage Am. Inc.*,
    569 F. Supp. 2d 535 (D. Md. 2008) ............................................................................... 19

*McLeod v. J.E. Dilworth Co.*,
    322 U.S. 327 (1944) ....................................................................................................... 18

*Montgomery County v. Maryland Soft Drink Ass'n, Inc.*,
    281 Md. 116 (Md. 1977) ................................................................................................ 18

*National Bellas Hess v. Illinois*,
    386 U.S. 753 (1967) ....................................................................................................... 18

*Okla. Tax Comm'n v. Jefferson Lines, Inc.*,
    514 U.S. 175 (1995) ................................................................................. 18, 21, 22, 23

*Penn Sec. Life Ins. Co. v. United States*,
    524 F.2d 1155 (Ct. Cl. 1975), *aff'd sub nom.*
    *United States v. Consumer Life Ins. Co.*, 430 U.S. 725 (1977) ...................................... 10

*Pickett v. Prince George's County*,
    291 Md. 648 (Md. 1981) ................................................................................................ 17

*Pitt County v. Hotels.com, L.P.*,
    553 F.3d 308 (4th Cir. 2009)........................................................................ 4, 7, 8, 10, 16

*Pitt County v. Hotels.com, L.P.*,
    No. 4:06-CV-30-BO, slip op. (E.D.N.C. Aug. 13, 2007) ............................................... 13

*Quill Corp. v. North Dakota*,
    504 U.S. 298 (1992) ................................................................................... 17, 18, 19, 20

*Tawes v. Home Owners' Loan Corp. of Washington*,
    180 Md. 401 (Md. 1942) ........................................................................... 14

*Textron, Inc. v. United States*,
    561 F.2d 1023 (1st Cir. 1977) ................................................................... 10

*T-Mobile USA, Inc. v. Dep't of Fin.*,
    C.A. Nos. 05-MI-00-PP67-00700, 05-MI-00-0100-0103,
    2006 Md. Tax LEXIS 4 (M.D.T.C. June 29, 2006) ..................................... 18

*Travelscape, LLC v. S.C. Dep't of Rev.*,
    No. 08-ALJ-17-0076-CC (S.C. Adm. Ct. Feb. 12, 2009) ............................ 11

*United States v. Edmonson County*,
    No. 1:00-cv-155-RG, 2001 U.S. Dist. LEXIS 17660
    (W.D. Ky. Oct. 1, 2001) ................................................................. 20, 23, 24

*United States v. Williams*,
    128 S. Ct. 1830 (2008) ............................................................................... 7

*United States v. Parker*,
    30 F.3d 542 (4th Cir. 1994) ......................................................................... 6

*Western & Southern Life Ins. Co. v. Weber*,
    209 S.W. 716, 718 (Ky. 1919) ................................................................... 10

Ind. Dep't State Rev., Letter of Findings, No. 08-0434 (Nov. 24, 2008) ...................... 23

Md. Code Ann. § 9-301, *et seq* ................................................................... *passim*

Worcester County Code of Ordinances § TR 1-601 *et seq* ................................ *passim*

Orange, Tex., Code of Ordinances § 1.601(a) ............................................................ 12

Jerome Hellerstein & Walter Hellerstein
    *State Taxation* § 4.16[1][e], § 4.16[2] (3d ed. 2000) ............................. 21, 22

Merriam-Webster Online Dictionary (2005) ................................................................ 6

# PRELIMINARY STATEMENT

This is a statutory construction case.  Worcester County's construction of its hotel rental tax is entirely dependent upon an assertion that appears for the first time in its brief and is nowhere in its Complaint -- **that the Defendant online travel companies are "hotels."**  This remarkable new construction contradicts the statutory definition and plain meaning of "hotels."

The Maryland General Assembly authorized Worcester County to impose a hotel rental tax on "a transient charge paid to a hotel located in [Worcester] [C]ounty."  Enabling Act § 9-303(a).  A "hotel" is defined as "an establishment that offers sleeping accommodations for compensation," including an apartment, cottage, hostelry, inn, motel, rooming house or tourist home.  Enabling Act § 9-301(d).  Similarly, Worcester defines "hotel" in its Ordinance as "[a]ny public or private hotel, inn, hostelry, tourist home or house, motel, rooming house, apartment house, cottage or other similar lodging place offering sleeping accommodations...."  Ord. § TR 1-601(b).  The term "transient charge" is defined as "a hotel charge for sleeping accommodations...."  Enabling Act § 9-301(f)(1).  A "transient charge" does not include "hotel charge[s] for services or accommodations other than sleeping accommodations."  Enabling Act § 9-301(f)(4).  Thus, Worcester County is only authorized to impose the hotel rental tax on the charge for sleeping accommodations paid to a hotel located in Worcester County.

Plaintiff's arguments to the contrary are wrong for five reasons.  First, Plaintiff implicitly concedes that deeming Defendants to be "hotels" defies common sense, common parlance, and any commonly accepted understanding of the term "hotel."  The County asserts that Defendants are "hotels" under the "plain meaning" of the Enabling Act, yet it acknowledges that "this is true even if … the Defendants are not hotels as that term is understood in common parlance," and that "[t]he statutory definition of a term used in a statute prevails over colloquial meanings of that term."  (Ans. Br. at 7.)  Here, the statutory definition cannot reasonably be construed to

include the Defendant online travel companies ("OTCs") under the terms of the Enabling Act, the Ordinance, common parlance, or any other plausible understanding of the word "hotel."  The County's proffered construction also violates the statutory construction rules of *ejusdem generic* and *nositur a sociis*.

Second, the County's construction conflicts with a recent decision issued by the Fourth Circuit Court of Appeals as well as other federal court decisions involving these same Defendants.

Third, the County's construction conflicts with its own long-standing interpretation of its Ordinance, which it has applied only to physical lodging establishments in the County.

Fourth, even if Worcester's new construction was nonetheless reasonable -- which it is not -- it must be rejected because the resulting ambiguity would have to be resolved in favor of Defendants.  Further, if there are two constructions that can be given to an ordinance, one of which would create a serious constitutional conflict, as Worcester's would, the law should be construed to avoid such conflict.

Fifth, the County's constitutional analysis, premised on the incorrect assertion that the transactions between Defendants and their customers are "quintessentially *intrastate* transaction[s]" (Ans. Br. at 20), completely misses the mark.  Because Worcester County is not the situs of the agreement, payment, or delivery of the OTCs' services, the County cannot impose the hotel rental tax on the OTCs.

Finally, the County's state law claims fail for the same reasons its primary tax claims fail, as well as for additional reasons.  The Complaint should be dismissed in its entirety.

**ARGUMENT**

I.    **THE WORCESTER HOTEL RENTAL TAX DOES NOT APPLY TO DEFENDANTS.**

    A.    **The Hotel Rental Tax Only Applies To Amounts Paid To A Hotel And None Of The Defendants Is A "Hotel."**

The General Assembly granted to Worcester County the limited authority to impose "a tax on a transient charge ***paid to a hotel*** located in [Worcester] county." Enabling Act § 9-303(a) (emphasis added). Consistent with this mandate, Worcester County imposes its hotel rental tax on payments for "room or building rental," which is defined as "[t]he total charge ***made by any hotel***." Ord. § TR 1-601(a), (b) (emphasis added).[1]

Likewise, the General Assembly mandated that any hotel rental tax imposed by the County be collected and remitted by the ***hotel***. Enabling Act § 9-309(a) ("A hotel shall…collect the hotel rental tax…"); Enabling Act § 9-309(b) ("[a] hotel pays the tax to th[e] county…"). The County Ordinance requires "[e]very person receiving any payment for room or building rental" to collect and remit the tax. Ord. § TR 1-601(c), (d). The "room or building rental" is defined as the "total charge made by [the] ***hotel***." Ord. § TR 1-601(b) (emphasis added).

Thus, both the Ordinance and the Enabling Act unambiguously apply only to ***hotels*** and the amounts ***paid to hotels*** for the rental of sleeping accommodations. The plain meaning and language of the pertinent definitions of "hotel" refute Plaintiff's contorted argument that the Defendant online travel companies are "hotels." Section 9-301(d) of the Enabling Act defines

---

[1] Worcester County has no authority to impose a tax until and unless it is granted such authority by the State legislature. *Board of County Comm'r of Cecil County v. R & M Enters.,* 350 Md. 540, 545 (Md. 1998) ("'[A]s subdivisions of the State, counties do not have inherent taxing authority; their power to tax depends upon the grant of authority from the State.'"). Consequently, "'Courts strictly construe the delegation of taxing power to a county.'" *Id.* (citation omitted). In the *Baltimore County v. G&G Partnership* case cited by Worcester, the county at issue was Baltimore County, which has a charter home rule form of government that carries with it a grant from the state legislature of general power to tax to the extent the state can (with certain limits). No. 1656, 1987 Md. App. LEXIS 437 (Md. Ct. Spec. App. June 18, 1987). Thus, Baltimore County's authority to impose the transfer tax was derived from its county code. In this case, however, Worcester County derives its authority to impose a hotel tax not from a broad grant of taxing authority, but rather from a state enabling statute. *See* Enabling Act § 9-303(a). Thus, Worcester's power to tax is confined by that statute and may not be more broadly construed -- contrary to the County's assertions in its brief.

3

"hotel" as follows:

> (1)   "Hotel" means an establishment that offers sleeping accommodations for compensation.
> (2)   "Hotel" includes:
>    (i)   An apartment;
>    (ii)  A cottage;
>    (iii) A hostelry;
>    (iv)  An inn;
>    (v)   A motel;
>    (vi)  A rooming house; or
>    (vii) A tourist home.

Similarly, section TR 1-601(b) of the Worcester Code contains the following definition:

> HOTEL, MOTEL, APARTMENT, COTTAGE or OTHER SIMILAR PLACE -- Any public or private hotel, inn, hostelry, tourist home or house, motel, rooming house, apartment house, cottage or other similar lodging place offering sleeping accommodations or space for one or more persons at any time and the owner or operator thereof, which for compensation holds out to furnish or furnishes sleeping accommodations or space to any transient.

While the Ordinance includes "the owner and operator" of such lodging places in its definition of hotel, because the Enabling Act limits the scope of the tax that may be imposed by the County, the Ordinance's definition may not be construed beyond the definition that is authorized by the Enabling Act.  *See Eastern Diversified Props. v. Montgomery County*, 319 Md. 45, 49 (Md. 1990) ("[S]ubdivision of the State, … may only act when specific grants of power are conferred upon them.")  (citations omitted).[2]

It is telling that, in its Complaint, Worcester <u>never alleges that Defendants are "hotels.</u>" To the contrary, Worcester alleges that:

- Defendants "acquire hotel rooms <u>from hotels</u>…"  (Compl. ¶2) (emphasis added);

---

[2] The County's suggestion (in a footnote) that Defendants are "owners and operators of hotels" because they allegedly "are the owners of the hotel rooms they rent" (Ans. Br. at 14, n.11) also defies common sense.  The County is arguing, for example, that priceline.com owns and operates the Holiday Inn because on any given night, several rooms in that hotel may be occupied by persons who obtained their reservation through priceline.com.  No common sense understanding of the term "owners and operators of hotels" -- even if this phrase were to be considered as properly authorized by the Enabling Act -- could include the OTCs as owners of the hotels.  *See, e.g., Pitt County v. Hotels.com, L.P.*, 553 F.3d 308 (4th Cir. 2009).  Even if the City's allegation were true (which it is not), at a minimum, that might make Defendants owners of hotel *rooms* (sleeping accommodations), not of hotels.

- An ITC or "internet travel company" is an "entity organized to effectuate travel plans, reservations and purchases via the world wide web" (Compl. ¶28);

- "Through their web portals, the Defendants allow consumers to rent hotel rooms in many different hotels throughout the country and the world." (Compl. ¶29) (emphasis added);

- "These companies offer their services to hotels…," (Compl. ¶29) (emphasis added);

- The "Defendants purchase rooms from hotels at the lower wholesale rate using their own credit." (Compl. ¶36) (emphasis added); and

- "Worcester County is paid only that portion of the Hotel Room Tax that the hotels collect (and duly remit) based upon their sale of rooms to the ITCs at the lower wholesale rate." (Compl. ¶45) (emphasis added).

Worcester now argues in its brief that Defendants are "hotels," even though they also (inconsistently) describe Defendants as "internet travel companies." (Ans. Br. at 1.) The County's brief is a belated attempt to expand the definition of "hotel" in this case.

Defendants are online travel companies -- not hotels. Worcester's Complaint does not plead any facts -- let alone plausible facts (as required under the *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) standard) -- that would suggest that the relevant statutes include the OTCs within the definition of "hotel." In fact, Worcester's own Complaint distinguishes between "hotels," which the County in its brief now calls "brick and mortar hotels" (a phrase wholly absent from the Complaint), and online travel companies. (*Compare* Compl. ¶¶ 2, 29, 36 *with* Ans. Br. at 4.) The County's sleight-of-hand in now arguing that Defendants are some kind of "virtual hotel" versus a "brick-and-mortar hotel" should be rejected as improper and implausible.

### 1. The Clear Language Of The Statute Supports Defendants' Construction.

Statutory language must be given its clear and commonly accepted meaning. *Bowen v. City of Annapolis*, 402 Md. 587, 613 (Md. 2007) ("Statutory construction begins with the plain language of the statute, and ordinary, popular understanding of the English language dictates

interpretation of its terminology.") (citations omitted).  As commonly and plainly understood, each of the enumerated businesses in both the Enabling Act's and the Ordinance's definition of "hotel" is a physical lodging establishment with rooms being provided to transients on-site.[3]  The County does not (and cannot) allege that Defendants are doing business as apartments, cottages, hostelries, inns, motels, rooming houses or tourist homes.

The County's argument that the general definition of "hotels" under the Enabling Act -- "an establishment that offers sleeping accommodations for compensation" -- includes Defendants must similarly fail.  Under the rule of statutory construction of *ejusdem generis*, the term "an establishment that offers sleeping accommodations" must be informed and limited by the words that follow it.  *United States v. Parker*, 30 F.3d 542, 553 (4th Cir. 1994) ("'The principle of *ejusdem generis* [provides] that a general statutory term should be understood in light of the specific terms that surround it.'") (citing *Hughey v. United States*, 495 U.S. 411, 419 (1990)); *Host Marriott Corp. v. United States*, 113 F. Supp. 2d 790, 793 (D. Md. 2000) (*ejusdem generis* applies when a "term precedes, or more often follows, an enumeration of specific terms in order to expand the list without identifying every situation covered by the statute"), *aff'd*, 267 F.3d 363 (4th Cir. 2001).

Because each of the businesses listed in the Enabling Act's definition of "hotel" is a *physical establishment* at which sleeping accommodations are provided to guests, the general term "an establishment that offers sleeping accommodations" must also be limited to other physical establishments at which sleeping accommodations are provided to guests.  Therefore, under the canon of *ejusdem generis*, "hotel," as defined in the Enabling Act, refers only to other

---

[3]  *Merriam-Webster Online Dictionary* (2005), for example, defines these terms as follows: Motel: "an establishment which provides lodging and parking and in which the rooms are usually accessible from an outdoor parking area"; Motor Court: "Motel"; Hotel: "an establishment that provides lodging and usually meals, entertainment, and various personal services for the public: inn"; Inn: "an establishment for the lodging and entertainment of travelers."  Furthermore, the term "establishment" itself suggests a physical location: "a place of business or residence with its furnishings and staff."  In *Merriam-Webster Online Dictionary*.  Retrieved May 12, 2009, from http://www.merriam-webster.com/dictionary/motel, http://www.merriam-webster.com/dictionary/ motor court, http://www.merriam-webster.com/dictionary/hotel, http://www.merriam-webster.com/dictionary/inn, http://www.merriam-webster.com/dictionary/establishment.

physical lodging establishment businesses, such as apartments, cottages, hostelries, inns, motels, rooming houses or tourist homes.[4]

Another related, long-accepted rule of statutory construction also compels Defendants' construction. Under *noscitur a sociis*, "a word is known by the company it keeps…. This rule we rely upon to avoid ascribing to one word a meaning so broad that it is inconsistent with its accompanying words." *Gustafson v. Alloyd Co.*, 513 U.S. 561, 575 (1995); *see also United States v. Williams*, 128 S.Ct. 1830, 1839 (2008) ("[T]he commonsense canon of *noscitur a sociis* … counsels that a word is given more precise content by the neighboring words with which it is associated."). Interpreting the phrase "an establishment that offers sleeping accommodations," as Worcester suggests, to include not only apartments, cottages, hostelries, inns, motels, rooming houses and tourist homes, but also online travel companies would ascribe to that term "a meaning so broad that it is inconsistent with its accompanying terms."

The United States Court of Appeals for the Fourth Circuit recently construed similar limiting language in Pitt County, North Carolina's lodging tax ordinance. *Pitt County v. Hotels.com, L.P.,* 553 F.3d 308. In the only appellate decision anywhere to reach the merits of a taxing authority's attempt to apply a lodging tax to OTCs, the Fourth Circuit affirmed dismissal with prejudice of Pitt County's action against these same Defendants:

> North Carolina law permits Pitt County to collect, under its own ordinance, an occupancy tax from a business renting rooms in the county if the operator of the business comes within the definition of "retailer" under the state's sales tax statute. "*Operators of hotels, motels, tourist homes, tourist camps, and similar type businesses* ... are considered retailers" under the statute. We conclude that **an online travel company** does not meet this statutory definition of a "retailer" because **it is not a business that is of a type similar to a hotel, motel, tourist home, or tourist camp**. We therefore agree with the district court that the County is not entitled to collect the

---

[4] This canon is embodied in the section of the Maryland Style Manual for Statutory Law cited by the County (Ans. Br. at 8), as well as Md. Ann. Code art. 1, § 30, both of which note that the use of the term "includes" indicates that the listed items are meant to be "illustrative." Accordingly, the physical lodging establishments listed in the Enabling Act definition of "hotel" is meant to illustrate the types of "establishments" that are included in the general definition of "an establishment that offers sleeping accommodations for compensation."

occupancy tax.

*Id.* at 310 (emphasis added).  Plaintiff relegates its discussion of this controlling decision to a

lone footnote.  (*See* Ans. Br. at 14, n.11.)

The Fourth Circuit explicitly rejected Pitt County's assertion that the OTCs were

operators of "similar type businesses" to hotels, and therefore, subject to the tax because they

were involved in and made a profit from the rental of hotel rooms:

> We are guided here by the familiar *ejusdem generis* canon of statutory construction: … [T]he phrase "similar type businesses" is preceded by four specifically enumerated businesses: hotels, motels, tourist homes, and tourist camps. The specifically enumerated businesses in the statute, unlike [OTCs], all provide lodging to patrons on site.  They are all physical establishments with rooms or other accommodations where guests can stay.  A ***business that arranges for the rental of hotel rooms over the internet***, but that does not physically provide the rooms, is not a ***business that is of a similar type to a hotel***, motel, or tourist home or camp. Any different conclusion would be inconsistent with the canon of *ejusdem generis*.

*Id*. at 313 (emphasis added).

Here, in both the Enabling Act's and the County Code's definitions there are similar lists

of enumerated businesses, some of which were also included in the Pitt County ordinance.  Each

of the enumerated businesses share a key common feature -- they are indeed "brick-and-mortar"

physical establishments that directly offer on-site sleeping accommodations -- not indirectly

through other entities such as online travel companies.  This was important in the Fourth Circuit's

conclusion that the enumerated businesses "are all <u>physical establishments</u> with rooms or other

accommodations where guests can stay."  *Id.* (emphasis added).

The Fourth Circuit ultimately held that "under the plain meaning of [the ordinance], an

[OTC] is not a retailer because it is not a business of a type that is similar to a hotel, motel, or

tourist home or camp.  As a result, an [OTC] is not subject to the Pitt County occupancy tax."  *Id.*

at 314.  Thus, the Fourth Circuit concluded that under the plain meaning of the limiting language

of the relevant statutes and ordinance and applying governing rules of construction, the tax could

not be read to apply to Defendants. The same result should apply here, namely, that the OTCs are not subject to the Ordinance because they are not businesses of a type similar to hotels, motels, tourist homes, apartments, cottages, hostelries, inns or rooming houses.

While Worcester tries to argue that the weight of authority is contrary to Defendants' position, the County has failed to adequately consider not only the controlling authority in this Circuit, but other decisions reaching a similar result. Three other federal courts have dismissed such cases on related grounds. *See Louisville/Jefferson County Metro Gov't v. Hotels.com L.P.*, No. 3:06-CV-480-R, 2008 WL 4500050, at \*5 (W.D. Ky, Sept. 30, 2008) (dismissing case where court could not "find a principled basis for determining … that internet businesses that have neither ownership, nor physical control, of the rooms they offer for rent are 'like or similar' to 'motor courts, motels, hotels, or inns'"); *City of Findlay v. Hotels.com*, 561 F. Supp. 2d 917, 922 (N.D. Ohio 2008) (stating that OTCs are not "'establishments' in the sense that hotels typically are"); *City of Orange, Tex. v. Hotels.com, LP*, No. 1:06-CV-413, 2007 WL 2787985, at \*1, \*8 (E.D. Tex. Sept. 21, 2007) (dismissing claims based on occupancy tax ordinance that "clearly imposed a tax on consideration paid to a motel or hotel"). Defendants respectfully refer the Court to their reply to Baltimore City's brief for a fuller discussion of these cases.

## 2. The loophole argument must be rejected here for the same reasons the Fourth Circuit rejected it in *Pitt County*.

Instead of addressing these key authorities, the County argues that Defendants' construction would open up a "loophole" and thus, should be rejected. They cite the recent decision in Tennessee and a decision in Fairview Heights, Illinois. The County's assertion of a possible loophole is a red herring. Such a loophole is entirely fictional because taxing authorities routinely look past "shell entities" and sham transactions in imposing tax, but respect economically meaningful arms' length transactions like those between hotels and Defendants here. *See Black & Decker Corp. v. United States*, 436 F.3d 431, 441 (4th Cir. 2006).

If the loophole suggested by the County existed here, it is the Court's responsibility to enforce the Ordinance as written, not fix potential loopholes. *See Textron, Inc. v. United States*, 561 F.2d 1023, 1025 n.2 (1st Cir. 1977) (refusing to adopt the IRS's statutory construction and noting "[l]oopholes cannot be repaired after the fact simply on the principle that to apply the law as written leads to a bad result."); *Penn Sec. Life Ins. Co. v. United States*, 524 F.2d 1155, 1163 (Ct. Cl. 1975) ("[I]t seems to us preferable to accept the statute as written, leaving to Congress the function of closing loopholes (if they exist)…"), *aff'd sub nom. United States v. Consumer Life Ins. Co.*, 430 U.S. 725 (1977).

Moreover, the Fourth Circuit in *Pitt County* has specifically dealt with, and rejected, the argument advanced by the County:

> Even if we assume … the viability of this loophole, its potential for mischief does not compel a broader interpretation of the "similar type businesses" language …. Rather, "it seems to us preferable to accept the statute as written, leaving to [the legislature] the function of closing loopholes (if they exist)…." The loophole identified …, if indeed it is a real one, may simply indicate that the North Carolina General Assembly failed to consider the tax consequences of a situation where hotel rooms are rented first at wholesale and later re-let at retail rates to consumers. On the other hand, the statute's language may be the result of the legislature's deliberate choice to limit the application of the sales tax to the actual operators of hotels and similar type businesses. In either case, we may not expand the statute's reach beyond what its plain language will bear.

*Pitt County*, 553 F.3d at 314. Similarly, the District Court in the *Louisville* case made clear that if a taxing authority is displeased with the provisions of a tax ordinance as written, the proper remedy is legislative amendment of the ordinance, not judicial action to expand the language as written. *Louisville*, 2008 WL 4500050, at *5 (quoting *Western & Southern Life Ins. Co. v. Weber*, 209 S.W. 716, 718 (Ky. 1919)).[5]

---

[5] Worcester also argues that, under Defendants' interpretation of the Ordinance, no one would be responsible for the collection and remittance of the hotel rental tax because the person who pays the "transient charge" does not pay it to a "hotel." (Ans. Br. at 8-9.) This baseless assertion also fails in that if the County is displeased with the Ordinance as written, the proper remedy is legislative revision. Of course, such revision would face the insurmountable constitutional barriers discussed *infra*.

In addition to relying on the "loophole" argument that the Fourth Circuit has firmly rejected, the County relies on a decision from a quasi-judicial agency in South Carolina that involved only one of the companies here – even though the County incorrectly states that proceeding involved "the ITCs." (Ans. Br. at 12.) Notably, that decision distinguished the highly relevant *Louisville* case (which the County ignores) by stating that:

> Obviously, here, as in [*Louisville*] *Metro Government*, resolution of whether the accommodations tax applies to the internet company focuses upon an analysis of the "business" of the internet company. Nevertheless, <u>the decisive issue in this case is not whether Petitioner's business in "like or similar" to the hotel business,</u> but whether Petitioner is engaged "in the business of furnishing accommodations" to travelers for consideration. The South Carolina Sales and Use Tax defines "business" to include "all activities, with the object of gain, profit, benefit, or advantage, *either direct or indirect.*"

*Travelscape, LLC v. S.C. Dep't of Rev.*, No. 08-ALJ-17-0076-CC at 16 (S.C. Adm. Ct. Feb. 12, 2009) (underlining added). Thus, the statutory regime at issue in South Carolina was entirely different from the one at issue in this case.[6]

### B. Worcester County May Impose A Tax Only On Amounts Paid To A Hotel, And Not On Any Other Amounts.

Again, in order to achieve their desired result, the County has to ignore key provisions of the governing statutes. The General Assembly granted to Worcester County the limited authority to impose "a tax on a transient charge **paid to a hotel** located in [Worcester] county." Enabling Act § 9-303(a) (emphasis added). Consistent with this mandate, Worcester County imposes its hotel rental tax on payments for "room or building rental," which itself is defined as

---

[6] In addition, the South Carolina decision distinguished *Pitt County* -- which is controlling here -- by stating that:

> In the present case, unlike *Pitt County*, <u>the Court need not find Petitioner is an operator of a hotel or a "similar type" of business in order to determine that Petitioner is liable for the Accommodations Tax.</u> Rather, the Court must only conclude that Petitioner is engaged "in the business of furnishing accommodations" to transients for consideration. As discussed above, being engaged "in the business of furnishing accommodations" does not require an entity to operate a hotel or to be "of the same kind, character and nature" as a hotel.

*Id.* at 17 (underlining added). Moreover, Expedia is appealing the *Travelscape* opinion based on its contention that it was wrongly decided.

"[t]he total charge **made by any hotel**." Ord. § TR 1-601(a), (b) (emphasis added). Thus, Defendants are not liable for hotel rental tax on the amounts charged to their customers and retained by Defendants as compensation for their reservation facilitation services because those are not charges "**paid to a hotel**" or "**made by any hotel**" in Worcester County.

All that the County is entitled to is the 4.5% hotel rental tax on the consideration the hotel charges and receives for sleeping accommodations, which is precisely what happens here. Plaintiff admits that "[i]n the course of the entire Merchant Model transaction, Worcester County is paid only that portion of the Hotel Room Tax that the hotels collect (and duly remit) based on their sale of rooms to the ITCs at the lower wholesale rate." (Compl. ¶45.) That is all the County is entitled to receive. The tax is imposed solely on consideration **paid to a hotel** in Worcester for occupancy of a room. Because Defendants are not hotels and Plaintiff admits that all taxes due on amounts **paid to hotels** have been remitted to Plaintiff, any amounts retained by Defendants as compensation for their reservation services cannot be consideration paid to a hotel and cannot be subject to the tax.

This is exactly what the Eastern District of Texas concluded when it dismissed the claim of the City of Orange, Texas. *See City of Orange, Tex. v. Hotels.com LP*, No. 1:06-CV-413, 2007 WL 2787985 (E.D. Tex. Sept. 21, 2007). There the operative provision stated:

> Providing for "a tax upon the occupancy of any room or space furnished by any hotel or motel…, such tax to be equal to seven (7) percent *of the consideration paid* by the occupancy of such room or space *to such hotel or motel....*"

Orange, Tex., Code of Ordinances § 1.601(a) (emphasis added) (Opening Br. App. Ex. I.) The Eastern District of Texas concluded that the ordinance is "not ambiguous" and "clearly states that the tax is imposed only on the amount received by the hotel in consideration for the occupancy of the room." *City of Orange*, 2007 WL 2787985, at *6 ("Plaintiff properly receives [tax on the amount received by the hotel] and, therefore, its pled claims for relief have no

merit.").

The Enabling Act that authorized Worcester County to impose a hotel rental tax is similar to the Orange ordinance. The operative language is as follows:

| Orange Ordinance § 1.601(a) (emphasis added) | Md. Code Ann. § 9-303(a) (emphasis added) |
|---|---|
| Providing for "a tax upon the occupancy of any room or space furnished by any hotel or motel…, such tax to be equal to seven (7) percent *of the consideration paid* by the occupancy of such room or space *to such hotel or motel….*" | "(a) In general -- Except as provided in subsection (c) of this section, an authorized county may impose, by resolution, a tax on a *transient charge paid to a hotel* located in that county." |

Because (a) Defendants are not hotels and (b) Plaintiff has already received hotel occupancy tax paid on the amounts paid to a hotel, Defendants cannot be liable under the express language of the applicable statutes.[7]

Further, the Enabling Act authorizes Worcester County to impose a hotel rental tax on "a transient charge paid to a hotel *located in [Worcester] County*." Enabling Act § 9-303(a) (emphasis added). Even if Defendants were hotels (which they are not), Defendants are not "located in Worcester County." Rather, as the County alleges, "the Plaintiff is a resident of a different state than each of the Defendants." (Compl. ¶¶ 6; 10-27.) Thus, the County's claims should also be dismissed on this ground.

### C. The Hotel Rental Tax Imposes A Tax Only On Hotel Charges For Sleeping Accommodations.

Even if the Court somehow concluded that the OTCs were "hotels," and even if the imposition of Worcester County's hotel rental tax were not expressly limited to the charge "paid to a hotel," Worcester County's purported claims would still fail because the amount each Defendant charges a consumer and retains for its online service is not a "transient charge" (*i.e.*, "a hotel charge *for sleeping accommodations*") or "room or building rental" (*i.e.*, "the total charge *made by any hotel* … *for sleeping accommodations*") subject to the hotel rental tax

---

[7] *See Pitt County v. Hotels.com, L.P.*, No. 4:06-CV-30-BO, slip op., at 11 (E.D.N.C. Aug. 13, 2007), *aff'd by Pitt County*, 533 F.3d 308, (Opening Br. App. Ex. A-1) ("[T]he Occupancy Tax applies only to the *hotel's* gross receipts, or put another way, to the room price charged by the hotels themselves.")

under the Enabling Act or Ordinance.  Enabling Act § 9-301(f)(1); Ord. § TR 1-601(b) (emphasis added).

The County concedes that it is receiving the proper amount of tax on the amount that Defendants receive from their customers and pass on to hotels on their customers' behalf. (Compl. ¶45.)  To use the County's own example, if a Defendant receives $2000 from a customer, $1500 of which the Defendant then pays to the hotel for the hotel room, Worcester currently receives $67.50 in hotel rental tax, or 4.5% of the $1500 paid for the hotel room.  What the County claims to be owed is 4.5% of the amount retained by the Defendant ($500 in the County's example).  (Ans. Br. at 4-5.)  The County cannot plausibly argue that these amounts, which are *not paid over to the hotel*, are charges "made by [the] hotel … for sleeping accommodations."  Indeed, Worcester concedes that Defendants provide services to their customers.  (Compl. ¶¶ 28-29.)  If the $500 retained by Defendants in the County's example were considered to be paid for sleeping accommodations, that would imply that Defendants are providing their services for free.  Such a result is clearly illogical.

Further, it is plain from the County's brief that the Complaint does not allege facts sufficient to conclude that the amounts retained by Defendants are charges for sleeping accommodations.[8]  To support its position, the County asserts that Defendants buy and sell rooms. (*See*, e.g., Compl. ¶¶ 2, 35; Ans. Br. at 16-17.)  These assertions (which reflect the County's mistaken understanding of Defendants' business models) fail to allege that the amounts retained by Defendants are paid for sleeping accommodations.  These amounts, which represent the excess

---

[8] Worcester also makes certain untrue assertions merely on "information and belief" such as: "Defendants charge consumers the full Hotel Rental Tax based on the retail rate paid by consumers, but remit none of that amount to Worcester County."  (Compl. ¶45.)  This speculative allegation falls far short of the *Bell Atlantic Corp. v. Twombly* standard. 550 U.S. 544.  <u>Plausible facts</u> are required and none are pled to support this rote allegation, which class action plaintiffs have repeated in their cases across the country.  Worcester cites nothing in the Ordinance or any Maryland law conferring on the County a cause of action against anyone for taxes not owed to them.  A claim for allegedly charging customers a "tax" not owed and remitted would belong, if at all, to the customers, not the County. *Tawes v. Home Owners' Loan Corp. of Washington*, 180 Md. 401 (Md. 1942).

of the amount paid by Defendants' customers over the amounts sent to the hotels for the rental of the hotel room (*i.e.*, "for sleeping accommodations"), are retained by Defendants as consideration of the separate services that the County concedes Defendants provide.  (*See* Compl. ¶¶ 28-29.) Because these amounts are, thus, not "a hotel charge for sleeping accommodations," they are not subject to the tax.[9]

### D. The Hotel Rental Tax Imposes Tax Collection And Remittance Obligations Only On Hotels, Not On Defendants.

Relying on its mistaken impression that the County can impose a tax beyond the scope of what was authorized by the Enabling Act, the County's brief completely ignores the limitation in the Enabling Act that "***hotel[s]*** shall … collect the hotel rental tax from the person who pays the transient charge."  Enabling Act § 9-309(a)(2).[10]  Instead, the County asserts that "Defendants are among the parties required to collect and remit the Hotel Rental Tax…."  (Ans. Br. at 10 (emphasis added).)  The County then goes on to state that the duty to collect the hotel rental tax "is placed on '[e]very person receiving any payment for room … rental' that is taxed pursuant to

---

[9] The County's contention that Defendants are not entitled to exclude the amounts for their reservation facilitation services from the hotel rental tax base because such amounts are not separately set forth on the bills to their customers similarly fails.  (Ans. Br. at 17.)  The cited sections of the Ordinance and Enabling Act apply only to **hotels**, which (as discussed above) Defendants are not.

[10] The cases cited by the County do not support its assertion that the County has the authority to tax more broadly than the taxing powers granted to it by the legislature so long as it does not "conflict" with a state statute.  (Ans. Br. at 14-15.)  For example, at issue in *Coalition for Open Doors v. Annapolis Lodge No.* 622, 333 Md. 359 (Md. 1994), was whether the City of Annapolis could enact an ordinance that prohibited private clubs from discriminating in their membership if they wanted to obtain or renew an alcohol license.  The corresponding state law expressly stated that it did not apply to private clubs.  Thus, the court found no conflict between the two.  *Id.* Here, the Enabling Act speaks to the issue of what is taxed.  As the County has no inherent power to tax, *see Board of County Comm'r of Cecil County v. R & M Enters.*, 350 Md. App. 356 (Md. Ct. Spec. App. 2001), any broader formulation of what is taxed would present an impermissible conflict.  *G&G Partnership*, 1987 Md. App. LEXIS 437 involved a county property transfer tax that was imposed on a different basis than the state transfer tax.  The county tax was based on the assessed value of the property, whereas the state tax was based on the consideration exchanged for the property.  The taxpayer argued that the county could not impose a tax that was broader than the state transfer tax.  *Id.*  The court observed that the state's property tax statutes "expressly recognize[] that the County's power to tax transfers exists concurrently with that of the State."  *Id.* at *11.  That is, there is both a state level tax and a county level tax on property transfers, which derive from separate statutes.  The Court of Special Appeals held that "[n]othing in the enabling legislation enacted by the Legislature or in the limitations subsequently imposed on the County's authority to levy transfer taxes suggests that the County is bound to assess the tax on the same basis as the State has elected for the imposition of its <u>completely independent</u> transfer tax. " *Id.* (emphasis added).  The same cannot be said for the Ordinance and Enabling Act here, as explained in footnote 1, *supra*.

TR § 1-601(a), which … includes Defendants' customers." (Ans. Br. at 11.) This nonsensical statement implies that Defendants' customers are "among the parties" that have an obligation to collect and remit the hotel tax. (Ans. Br. at 11.) Worcester's attempt to obfuscate the issue of who must collect and remit the tax cannot change the clear, unambiguous mandate of the Enabling Act: *hotels* must collect the tax and remit it to the County. Enabling Act § 9-309. Thus, consistent with the precedent discussed above, Defendants cannot be required to collect and remit the tax because they are not *hotels* in Worcester.[11]

## II.     ANY AMBIGUITY MUST BE RESOLVED AGAINST THE COUNTY.

Even if there were any ambiguity in the clear and unambiguous Ordinance at issue here, dismissal of this case would still be warranted because it is well-settled that any ambiguity in a tax imposition statute must be resolved *against* the government and *in favor of* the alleged taxpayer. *Comptroller v. Clyde's of Chevy Chase, Inc.*, 377 Md. 471, 484 (Md. 2003). The County offers nothing to rebut this well-established rule, which has been acknowledged by the Fourth Circuit. *See Pitt County*, 553 F.3d at 314; *see also Louisville/Jefferson County Metro Gov't*, 2008 WL 4500050.

## III.     THE COUNTY'S CONSTITUTIONAL ANALYSIS MISSES THE MARK.

Worcester attempts to dismiss the out-of-state Defendants' Commerce Clause arguments with the assertion that the transaction between Defendants and their customers is "a quintessentially *intrastate* transaction." (Ans. Br. at 20.) It is impossible to square the County's position with the fact that it premises this very lawsuit on diversity jurisdiction (Compl. ¶¶ 6, 10-

---

[11] Unable to avoid the fact that its position that Defendants ("among [other] parties") must collect and remit the tax would result in multiple taxation on the same transaction, the County baldly asserts that "Defendants will be entitled to an offset for the amount already remitted through the hotels." (Ans. Br. at 19.) The County's only support for this concept -- which is not found anywhere in the Ordinance or Enabling Act -- is a citation to the *City of Goodlettsville* case decided in the Middle District of Tennessee. Regardless of whether there exists such a concept under the Goodlettsville ordinance or under Tennessee law, it is clear that no such "offset" is available under the Worcester Ordinance or Enabling Act. Worcester's suggestion that Defendants would be entitled to such an offset further confirms that the Ordinance (without ad hoc amendments by the County) cannot operate as the County asserts.

27) and acknowledges that the OTCs are "entit[ies] organized to effectuate travel plans, reservations and purchases via the world wide web." (Compl. ¶28.) Even if the County's characterization of the transaction were true (which it is not) -- that Defendants buy and resell hotel rooms in Worcester County -- those activities simply do not take place solely *within Worcester County*.[12]

Further, the County's assertion that "[a]s an initial matter, the Hotel Rental Tax fundamentally is a local tax, not a tax on interstate commerce subject to the Commerce Clause…" (Ans. Br. at 19) highlights the County's misunderstanding of the Supreme Court's Dormant Commerce Clause jurisprudence. The characterization of a tax as a "local tax" does not shield it from Commerce Clause scrutiny. As guided by the United States Supreme Court, a state or local tax can only sustain a Commerce Clause challenge if it "'[1] is applied to an activity with a substantial nexus with the taxing State, [2] is fairly apportioned, [3] does not discriminate against interstate commerce, and [4] is fairly related to the services provided by the State.'" *Quill Corp. v. North Dakota*, 504 U.S. 298, 311 (1992) (*citing Complete Auto Transit, Inc. v. Brady*, 430 U.S. 274, 279 (1977)). Notably, Defendants do not and could not contest the County's assertion that "the *Brady* [sic] four-part test applies equally in evaluating sales and use taxes." (Ans. Br. at 22.) Rather, the sales-use tax distinction is important for the reasons discussed below.

A. **The Hotel Rental Tax Is A Sales Tax And The Sale At Issue Occurs Outside Worcester County.**

The County's allegation that "Defendants draw an inaccurate and irrelevant distinction

---

[12] Defendants' construction of the hotel rental tax as applying solely to hotels in Worcester (as set forth in section II, *supra*) is further compelled by their constitutional analysis. *First*, if there are two constructions that can be given to a statute, one of which would create a serious constitutional conflict, the law should be construed to avoid such conflict. *See Pickett v. Prince George's County*, 291 Md. 648 (Md. 1981). *Second*, under Defendants' construction of the Ordinance, the County already receives tax on that part of the transaction that occurs in Worcester, *i.e.*, the payment to the hotel for sleeping accommodations.

between sales taxes and use taxes" reveals their fundamental misunderstanding of this area of the law. (Ans. Br. at 21.) This distinction is *highly* relevant because the Dormant Commerce Clause prohibits taxing jurisdictions from imposing a sales tax upon sales that are consummated outside their borders. *See McLeod v. J.E. Dilworth Co.*, 322 U.S. 327, 330-31 (1944). Indeed, there is a significant line of authority providing that state and local governments cannot impose sales tax on sales occurring outside their borders. *See, e.g.*, *Quill Corp. v. North Dakota*, 504 U.S. 298 (1992); *National Bellas Hess v. Illinois*, 386 U.S. 753 (1967), *overruled on other grounds*.[13]

As Defendants explained in their Opening Brief, the Maryland courts have held that -- regardless of nomenclature -- sales taxes may be identified by two common characteristics. "First, there must be a taxable event which triggers payment of the tax, otherwise known as the sale. The second characteristic is the standard by which the tax was measured." *T-Mobile USA, Inc. v. Dep't. of Fin.*, C.A. Nos. 05-MI-00-PP67-00700 & 05-MI-00-0100-0103, 2006 Md. Tax LEXIS 4, at *3 (M.D.T.C. June 29, 2006) (*citing Montgomery County v. Maryland Soft Drink Association, Inc.*, 281 Md. 116, 377 A.2d 486 (Md. 1977)).[14] The County's argument that these cases are inapplicable because they do not address a use tax, but rather the application of the state sales tax is mystifying. The cited cases set forth the criteria for identifying a sales tax. Applying those criteria to the hotel rental tax leads to the conclusion that the tax is a sales tax.[15] Thus, under *McLeod v. J.E. Dilworth* (and reaffirmed in *Jefferson Lines*), the hotel rental tax may not be imposed on sales consummated outside of the County's borders. The transaction

---

[13] Worcester's contention that this cardinal rule of *McLeod* has now been rejected is wrong. (Ans. Br. at 22, n.17.) Indeed, the *Jefferson Lines* case repeatedly cited by the County reaffirmed the viability of *McLeod*'s key holding. *Okla. Tax Comm'n v. Jefferson Lines, Inc.*, 514 U.S. 175, 187 (1995).

[14] *See also Complete Auto Transit, Inc.*, 430 U.S. at 288 ("There is no economic consequence that follows necessarily from the use of … particular words, … and a focus on that formalism merely obscures the question whether the tax produces a forbidden effect.").

[15] Likewise, the Supreme Court in *Jefferson Lines* noted that "gross receipts taxes are on the gross receipts from sales payable by the seller, in contrast to sales taxes, which are also levied on the gross receipts from sales, but are payable by the buyer (although they are collected by the seller…)." *Jefferson Lines*, 514 U.S. at 179, n.3. Under this analysis, too, the hotel rental tax is a sales tax.

between Defendants and their customers does not occur within Worcester County, and thus Worcester County may not impose an obligation on Defendants to collect the hotel rental tax. For this reason alone, and for the reasons that follow, the County's claims must be dismissed.

> **B.      Because There Is No Allegation That The Out-of-State Defendants Have Physical Presence In Worcester County, The "Substantial Nexus" Requirement Of The Commerce Clause Cannot Be Met.**

Even if the County's application of the hotel rental tax to Defendants did not result in the unconstitutional application of a sales tax to a transaction that occurs outside the County's borders, it would still run afoul of at least two prongs of the *Complete Auto* test.   In order to satisfy the first prong of the test, a state or local tax must be "'applied to an activity with a substantial nexus with the taxing State….'" *Quill Corp.*, 504 U.S. at 311 (*citing Complete Auto Transit, Inc.*, 430 U.S. at 285).   The Supreme Court in *Quill* reaffirmed the established principle that, with respect to sales and use taxes, the "substantial nexus" required is the seller's physical presence in the taxing jurisdiction.   *Id.* at 317-18.   Unless the seller has employees, property, or persons soliciting business on its behalf physically in the jurisdiction, it cannot be required to collect tax.   *Id.* at 310-12, 317.

The County erroneously argues that *Quill*'s physical presence requirement is limited to "vendors 'whose only connection with customers in the [taxing] State is by common carrier or United States mail.'"   (Ans. Br. at 23.)   The *Quill* opinion itself belies the County's self-serving limitation:

> [A]lthough in our cases subsequent to *Bellas Hess* and concerning other types of taxes we have not adopted a similar bright-line, physical-presence requirement, our reasoning in those cases does <u>not</u> compel that we now reject the rule that *Bellas Hess* established in the area of <u>sales and use taxes</u>.   To the contrary, the continuing value of a bright-line rule in this area and the doctrine and principles of stare decisis indicate that the *Bellas Hess* rule remains good law. For these reasons, we disagree with the North Dakota Supreme Court's conclusion that the time has come to renounce the bright-line test of *Bellas Hess*.

*Quill Corp.*, 504 U.S. at 316 (emphasis added).[16]  Accordingly, under *Quill*, unless an entity has a physical presence in the taxing jurisdiction, the entity may not be compelled by that jurisdiction to collect sales or use taxes.  The County has not and cannot allege that Defendants have a physical presence in the County.

Unable to argue against this reality, the County turns to this Court's *Vonage* decision, alleging that Defendants, like Vonage, simply "'misunderstand[] what is the taxed transaction.'" (Ans. Br. at 23.)  The County, however, gives no further explanation of how it views *Vonage* as being supportive of its position, or what the County views the "taxed transaction" to be. Worcester simply cites *Vonage* as holding that "the presence of a billing address in the taxing locality is sufficient to constitute a 'substantial nexus.'"  (*Id.*  (quotation marks omitted).)[17]

The physical presence requirement reaffirmed by the Supreme Court in *Quill* is firmly and clearly established with respect to sales taxes.  The County does not allege that any of the Defendants have a physical presence in Worcester County and, therefore, Worcester's claims must be dismissed.

     **C.**    **Application Of The Hotel Rental Tax To Defendants Violates The Requirement That The Tax Be Fairly Apportioned Because It Exposes Defendants To The Risk Of Multiple Taxation.**

In order to satisfy the second prong of the *Complete Auto* test, a state or local tax must be

---

[16] *See also Mayor & City Council of Baltimore v. Vonage Am. Inc*, 569 F. Supp. 2d 535 (D. Md. 2008); *AT&T Commc'ns. of Md. v. Comptroller of Treasury*, 405 Md. 83 (Md. 2008); *United States v. Edmonson County,* No. 1:00-cv-155-RG, 2001 U.S. Dist. LEXIS 17660 (W.D. Ky. Oct. 1, 2001) (all applying the *Quill* physical presence test outside the context of "vendors 'whose only connection with customers in the [taxing] State is by common carrier or United States mail.'").

[17] Nor can the County find any comfort in *City of Charleston*, a South Carolina case.  While the *Charleston* court (erroneously) found that "cases cited by Defendants in which attempted taxation was struck down typically involve[d] scenarios where the only connection between the taxed entity and the taxing jurisdiction is that the goods happen to have been shipped through the jurisdiction on the way to their eventual destination" (Ans. Br. at 24, citing *City of Charleston v. Hotels.com, L.P.*, 586 F. Supp. 2d 538, 544 (D.S.C. 2008), the cases cited by Defendants in <u>this</u> case plainly do not involve such scenarios.  *See e.g., Quill Corp.*, 504 U.S. 298 (involving the sale of tangible property to residents of the taxing state, delivery of goods by common carrier to customers located in the state, and presence of computer software and diskettes in the state); *Edmondson County*, 2001 U.S. LEXIS 17660 (involving the facilitation of sale of local park admissions, plus ownership of eight computer CPUs, six monitors, seven printers, a telefax machine, software, T-1 data connection lines, a phone relay system, and ticket stock for use by park officials, all in Edmonson County).

"'fairly apportioned.'" *Quill Corp.*, 504 U.S. at 311 (*citing Complete Auto Transit Inc.,* 430

U.S. at 285). Defendants, in their Opening Brief, applied the settled rule for sales taxes, *i.e.*, that

the sale of a service can only occur (and thus be subject to tax) in one place, and that the state

with the proper claim to tax the service transaction is the state where the order for the services is

accepted, where payment is made, and where a portion of the service is rendered. *Jefferson*

*Lines*, 514 U.S. at 190. Accordingly, because none of these aspects of the transaction between a

Defendant and a guest occurs in the County, Worcester may not impose a sales tax on them.

The County attempts to dismiss Defendants' apportionment analysis by arguing that

Defendants "misstate the current test for fair apportionment," which questions whether a tax is

"'internally and externally consistent.'" (Ans. Br. at 25.) While the concept of separately

analyzing a tax for internal and external consistency was first announced by the Supreme Court

in *Container Corp. of Am. v. Franchise Tax Bd.*, 463 U.S. 159 (1983), in practice, when

analyzing sales and use taxes, courts frequently either analyze both questions in tandem or focus

primarily on external consistency, as Defendants did in their Opening Brief. *See also Jefferson*

*Lines*, 514 U.S. at 185-196.[18] As one treatise describes, "In some respects, the internal

consistency doctrine … adds little of substance to pre-existing Commerce Clause jurisprudence.

For example, an internally inconsistent apportionment formula that, if employed by every state,

would expose the taxpayer to taxation of more than 100 percent of its tax base would be invalid

under the settled rule barring multiple taxation of interstate commerce wholly apart from the

internal consistency doctrine." Jerome Hellerstein & Walter Hellerstein *State Taxation* ¶

4.16[1][e] (3d. ed. 2000). Similarly, "the external consistency test in substance is nothing more

than another label for the fair apportionment requirement. [U]sing the phrase 'external

---

[18] As the Supreme Court in *Jefferson Lines* explained, "In light of th[e] settled treatment of taxes on sales of goods and other successive taxes related through the stream of commerce, it is fair to say that because the taxable event of the consummated sale of goods has been found to be properly treated as unique, an internally consistent, conventional sales tax has long been held to be externally consistent as well." 514 U.S. at 188.

consistency' to describe this requirement has not added (or subtracted) anything from its substance." *Id*. at ¶ 4.16[2]. Regardless of the form of analysis, Worcester's attempted imposition of the hotel rental tax on Defendants fails the fair apportionment prong of *Complete Auto* test.

The County correctly notes that the internal consistency analysis asks whether the identical application of the tax at issue by every State or locality would place interstate commerce at a disadvantage as compared to intrastate commerce. (Ans. Br. at 26.) However, the County reaches the wrong conclusion when it determines that the hotel rental tax, as construed by the County, would be internally consistent. In *Jefferson Lines*, the Supreme Court noted that, while Oklahoma could constitutionally tax the full value of sales of bus tickets for interstate journeys that began in Oklahoma and for which the ticket sale took place in Oklahoma, Texas could not similarly tax the full value of the same transaction if the bus journey ended in Texas. 514 U.S. at 200. To allow Texas to do so, the Court reasoned, would be internally inconsistent because it would result in overlapping, multiple taxation. *Jefferson Lines*, 514 U.S. at 192, n.6. Likewise, as discussed in further detail on pages 32-36 of Defendants' Opening Brief, allowing Worcester County to tax the full value of the transactions at issue in this case would similarly result in overlapping, multiple taxation because any number of jurisdictions (including, for example, where the customer is located) could assert a right to tax the value of that portion of the services that took place in and was fairly attributable to that jurisdiction. Accordingly, Worcester's construction of the hotel rental tax as applying to the full value of the transactions at issue is not internally consistent.

For similar reasons, the County's construction of the hotel rental tax is also not externally consistent. As Defendants explained in their Opening Brief, in *Jefferson Lines*, the Court ruled, in the context if its "external consistency" analysis, that "[t]he taxable event . . .

comprises agreement, payment, and delivery of some of the services in the taxing State." 514 U.S. at 190. Evaluating the bus ticket sales at issue in that case, the Court held that Oklahoma could tax the sale of bus tickets that were sold in Oklahoma for interstate travel beginning in Oklahoma. *Id.* at 200. With regard to such sales, the agreement, payment and some of the services all took place in Oklahoma; thus, the application of Oklahoma's sales tax to the transaction was appropriate.

Here, in contrast, all of Defendants' online reservation services are performed, and the transactions with their customers are consummated, *outside* of Worcester County. Defendants do not have a place of business in Worcester County, and all online search, information, and reservation facilitation services are performed outside the County and delivered over the Internet. (*See* Compl. ¶¶ 6, 10-27, 29.) Likewise, all payment for Defendants' services is transmitted over the Internet and received by Defendants outside of Worcester County. The County admits as much in its brief when it cites the findings of the Indiana Department of State Revenue:

> The only activities which took place outside Indiana occurred when [the ITC] and its customer <u>reached an agreement</u> to conduct a transaction … and <u>arranged payment</u> for that transaction.

Ind. Dep't State Rev., Letter of Findings No. 08-0434, at 6 (Nov. 24, 2008) (emphasis added).[19] Even taking the County's allegations that Defendants buy and resell rooms as correct (which they are not), the County does not and cannot claim to be the situs of the agreement, payment, <u>and</u> delivery of services with respect to the hotel room reservation transactions at issue in this case; thus the County, under *Jefferson Lines*, cannot tax that transaction.

Here it should be noted that the County, amidst its claims regarding Defendants' failure to cite applicable law, fails to address the most relevant case decided on this point – the

---

[19] Defendants' citation of the letter of findings should not be construed as an endorsement of the conclusions of the Indiana Department of State Revenue. The ultimate findings of the administrative agency are currently being contested in Indiana state court.

*Edmonson County* case, which analyzed the application of the *Complete Auto* test to the

activities of an out-of-state seller that facilitated the reservation of admission tickets to a park

located in Kentucky.  2001 U.S. LEXIS 17660.  The purchase of admission tickets to a park in

Kentucky is no less "local" to Kentucky than the rental of a hotel room in Worcester County is

to the County.[20]  Regardless, the court still held that application of the Edmonson County

recreational license tax to the admission ticket sales transactions at issue violated the second

prong of the *Complete Auto* test.  *Edmonson County*, 2001 U.S. Dist. LEXIS 17660, at *29-30.

　　　With respect to the fair apportionment requirement, the *Edmonson County* court held that

the tax at issue was "not internally consistent because in addition to [Edmonson County,

Kentucky] and the State of Maryland, where [the company] is located, the state where each

consumer is located could tax the sales transaction."  *Id*.  The court further held that the tax was

"not externally consistent because taxing every transaction, regardless of whether it is

consummated in the [jurisdiction] reaches far beyond that portion of value that is fairly

attributable to economic activity within the [jurisdiction]."  *Id*. at *30.  Here, too, the County's

attempt to tax the out-of-state Defendants' transactions with consumers, which occur outside of

Worcester County, is neither internally nor externally consistent.  As discussed above, the

County's construction of the Ordinance poses the same risk of multiple taxation raised in

*Edmonson County*.  The County's efforts also similarly seek to reach "far beyond" that portion

of the value of the transactions at issue that is fairly attributable to the economic activity within

Worcester County.

---

[20] The County also fails to address *In re CWM Chemical Services, Inc.*, DTA No. 818757, 2003 N.Y. Tax LEXIS 307 (N.Y. Tax App. Trib. Dec. 11, 2003), a case in which the New York Tax Appeals Tribunal held that a sale of a service is localized where initiation of the service occurs.  In *CWM*, the taxpayers were providing waste transport and disposal services.  The taxpayers' employees picked up waste from out-of-state customers and transported the waste to its disposal facility in New York.  Following the Supreme Court's decision in *Jefferson Lines*, the Tax Appeals Tribunal held that New York sales tax would not apply to the sale of those services because the services were initiated outside of New York and therefore the taxable transaction took place outside the state.  *Id.*

## IV.    WORCESTER COUNTY'S TAG-ALONG CLAIMS ALSO FAIL.

Worcester County's tag-along claims fail for all the reasons Worcester County cannot state a claim under the Ordinance.  Defendants refer to the arguments made in their reply to the City of Baltimore's Answering Brief and, for the sake of efficiency, will not repeat them here.

### CONCLUSION

For the foregoing reasons, the Court should dismiss with prejudice Worcester County's Complaint in its entirety.


Dated: May 15, 2009                              Respectfully Submitted,

/s/ J. Stephen Simms
J. Stephen Simms (#4269)
John T. Ward (#1507)
M. Scotland Morris (#25167)
SIMMS SHOWERS LLP
20 S. Charles Street, Suite 702
Baltimore, Maryland 21201
Telephone:   410-783-5795
Facsimile:   410-510-1789
   Counsel for all Defendants

Darrel J. Hieber
  (admitted *pro hac vice*)
**SKADDEN, ARPS, SLATE, MEAGHER**
  **& FLOM LLP**
300 South Grand Avenue, Suite 3400
Los Angeles, California 90071
Telephone:    (213) 687-5000
Facsimile:     (213) 687-5600
E-mail:       dhieber@skadden.com

Karen L. Valihura
  (admitted *pro hac vice*)
**SKADDEN, ARPS, SLATE, MEAGHER**
  **& FLOM LLP**
One Rodney Square, P.O. Box 636
Wilmington, Delaware 19899
Telephone:    (302) 651-3000
Facsimile:     (302) 651-3001
E-mails:      kvalihur@skadden.com
***Counsel for Defendants priceline.com***
***Incorporated; Lowestfare.com Incorporated;***
***and Travelweb LLC***

James P. Karen
Deborah S. Sloan
  (*pro hac vice* application to be submitted)
**JONES DAY**
2727 North Harwood Street
Dallas, Texas 75201
Telephone:    (214) 220-3939
Facsimile:     (214) 969-5100
E-mails:    jkaren@jonesday.com
             dsloan@jonesday.com
***Counsel for Defendants Expedia, Inc. (DE);***
***Expedia, Inc. (WA); Hotels.com; Hotels.com, L.P.;***
***Hotels.com GP, LLC; Hotwire, Inc.; and TravelNow.com, Inc.***

Brian S. Stagner
  (*pro hac vice* application to be submitted)
Stacey S. Russell
  (admitted *pro hac vice*)
**KELLY HART & HALLMAN LLP**
201 Main Street, Suite 2500
Fort Worth, Texas 76102
Telephone:    (817) 332-2500
Facsimile:    (817) 878-9280
E-mail:     brian.stagner@khh.com
          stacy.russell@khh.com
*Counsel for Travelocity.com LP;*
*and Site59.com, LLC*


Elizabeth B. Herrington
  (*pro hac vice* application to be submitted)
**MCDERMOTT WILL & EMERY LLP**
227 West Monroe Street
Chicago, Illinois 60606
Telephone:    (312) 372-2000
Facsimile:    (312) 984-7700
E-mail:     eherrington@mwe.com
*Counsel for Defendants Orbitz, LLC;*
*Internetwork Publishing Corp. (d/b/a Lodging.com);*
*and Trip Network, Inc. (d/b/a CheapTickets)*

## CERTIFICATE OF SERVICE

I certify that on May 15, 2009 I caused the foregoing to be filed with this Court's

CM/ECF system for service on all record counsel.

/s/ J. Stephen Simms
J. Stephen Simms (#4269)
John T. Ward (#1507)
M. Scotland Morris (#25167)
SIMMS SHOWERS LLP
20 S. Charles Street, Suite 702
Baltimore, Maryland 21201
Telephone: 410-783-5795
Facsimile: 410-510-1789
  Counsel for all Defendants